# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

JAIME A. DAVIDSON, )
)
        PETITIONER, )
)
)  CRIM. NO. 92-CR-35
-VS- )  CIVIL NO. 5:00-CV-869(NPM)
)  APPEAL NO. 01-2370
)
UNITED STATES OF AMERICA, )
)
        RESPONDENT. )

FILED
MAR 13 2003

## AFFIDAVIT IN SUPPORT OF MOTION FOR NEW TRIAL AND/OR ALTER OR AMEND JUDGMENT WITH FINDINGS BY THE COURT... OF A PRISONER WHO'S ACTUALLY (FACTUALLY) INNOCENT

TO THE HONORABLE JUDGE OF SAID COURT;

MAY IT PLEASE THIS COURT:

    COMES NOW, AFFIANT/PETITIONER, JAIME A. DAVIDSON, PRO-SE, (REG. NO. 37593-053), PRESENTLY BEING HOUSED AT USP-POLLOCK (P.O. BOX-2099, POLLOCK, LOUISIANA 71467), HEREBY CERTIFIES THAT THIS PRESENT AFFIDAVIT

IN SUPPORT OF MOTION FOR NEW TRIAL ...," IS PRESENTLY BEING BROUGHT TO THIS HONORABLE COURT WITH DUE DILIGENCE AND UNDER GOOD FAITH, AND AFTER BEING DULY SWORN UNDER THE PENALTY OF PERJURY, AFFIANT DEPOSES AND SAYS:

1.   THAT I, ME, MY, AFFIANT AND/OR PETITIONER, IS REFERRED TO HEREIN AS JAIME ALEXANDER DAVIDSON, SR.;

2.   THAT I HAVE PERSONAL KNOWLEDGE SURROUNDING THE FACTS SET FORTH IN THIS AFFIDAVIT;

3.   THAT THIS IS A "PRIMA FACIE" AFFIDAVIT THAT RAISES A NUMBER OF CRITICAL ISSUES OF "FIRST 'NATIONAL' IMPRESSIONS;"

4.   THAT BASED ON THIS HONORABLE COURT'S DECEMBER 31ST, 2002 DENIAL ORDER RECEIVED BY AFFIANT ON JANUARY 3RD, 2003, AFFIANT HAS PREPARED THE INSTANT "MOTION FOR NEW TRIAL ...," PURSUANT TO RULES 52(b), 59(a)(c) AND (e), F.R.CIV.P. WITH EXTREME DUE DILIGENCE AND UNDER GOOD-FAITH TO MEET SAID RULE'S STRICT "10 DAYS" FILING DEADLINE (FROM THE DATE OF THE COURT'S JUDGMENT THE PETITIONER IS CHALLENGING); AND, AFFIANT HAS FILED THE INSTANT MOTION IN A TIMELY MANNER WITHIN THE SET 10 DAYS FILING DEADLINE (COUNTING HOLIDAYS AND WEEKENDS);

5.   THAT BASED ON USP-POLLOCK'S VIOLENT SERIES OF EVENTS (STABBINGS), FOLLOWED BY NUMEROUS "LOCKDOWNS" DUE TO SECURITY CONCERNS ALL THROUGH THE WEEK OF JAN. 6TH, 2003 UNTIL JAN. 9TH, 2003 (WHICH TRIGGERED A "PERMANENT LOCKDOWN" UNTIL FURTHER NOTICE), HAS DRASTICALLY HINDERED AFFIANT'S MOTION PRACTICES (REFERRING THE SPECIFIC ARGUMENTS TO "SEE, FOR IDENTIFICATION" PURPOSES, THE EXHIBIT WHICH SUPPORTS SAID ISSUE IN QUESTION;

6.     THAT IN LIGHT OF AFFIANT'S "MOTION FOR NEW TRIAL...," ATTACHED WITH THE VOLUMINOUS EXHIBITS IN SUPPORT OF SAME, THIS HONORABLE COURT'S THOROUGH CONSIDERATION WOULD EXPLICITLY REFLECT ON THE FACE OF THE RECORD THAT, THE EVIDENCE ALLEGEDLY PRESENTED AT MY TRIAL PROVES WHERE AFFIANT IS "FACTUALLY INNOCENT" IN "TOTAL CONTRADICTION" TO THE DISTRICT COURT'S 12-31-02 DENIAL ORDER AT PAGE 9, ALLEGING THAT, "THE PROOF AS TO HIS GUILT ON THE COUNTS CHARGED AGAINST HIM IN THE INDICTMENT WAS OVERWHELMING;"

7.     NOW, AFFIANT IS ABOUT TO "BREAK-DOWN" IN FULL DETAILS BY REFERENCE, WHAT ALL OF MY EXHIBITS FROM AFFIANT'S "MOTION FOR NEW TRIAL...," ARE TO BE UTILIZED IN SUPPORT OF, AND THEY ARE AS FOLLOWS:

EXHIBIT-A: AFFIANT'S "MOTION REQUESTING LEAVE TO RE-SUBMIT PETITIONER'S 'AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN, S.J.'s RECUSAL,'.... AFFIANT SUBMITS THAT THE HON. McCURN'S FAILURE TO CONSIDER SAID AFFIDAVIT OF RECUSAL ON ITS MERITS ONLY PROVES HIS BIASNESS AND FAVORITISM TOWARDS THE GOVERNMENT (MR. JOHN G. DUNCAN, ESQ. (AUSA)); AND, PRIOR TO CONSIDERING THE INSTANT MOTION FOR NEW TRIAL WITH VOLUMINOUS EXHIBITS, THE HON. McCURN, S.J. "MUST" RECUSE HIMSELF;

EXHIBIT-B: AFFIANT'S "AFFIDAVIT OF JAIME A. DAVIDSON IN SUPPORT OF MOTION REQUESTING LEAVE TO RE-SUBMIT PETITIONER'S 'AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN, S.J.'s RECUSAL...;'"AND, THE PRESENT AFFIDAVIT FURTHER SUPPORTS AFFIANT'S COMPLAINT

OF TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE COUNSEL CLAIM
FOR HINDERING MY DIRECT APPEAL BY WITHHOLDING MY DISCOVERY
MATERIALS FROM APPELLATE COUNSEL. MR. LAIDLAW'S ACTIONS ARE
CLEARLY CONTRIBUTED TO HIS ACTS OF "RACIAL DISCRIMINATION"
BEING RACIST AGAINST AFRICAN AMERICANS (BLACK PEOPLE) AND
TAKING ADVANTAGE OF MY PARENTS BY ROBBING THEM UNDER THE
FALSE PRETENSE THAT HE [MR. LAIDLAW] WAS GOING TO RETAIN THE
SERVICES OF A PRIVATE INVESTIGATOR...;

EXHIBIT-C: AFFIANT'S "NOVEL FORMED AFFIDAVIT
OF JAIME A. DAVIDSON, SR." DERIVING FROM MY INITIAL
"MOTION FOR RECONSIDERATION...," IN FURTHER SUPPORT OF
MY PRESENT MOTION FOR NEW TRIAL CONTAINING NUMEROUS
VITAL DOCUMENTS "WITHHELD" FROM MR. FREEMAN, ESQ. BY
MR. LAIDLAW, ESQ. PLEASE NOTE, ARROW NEXT TO EACH EXHIBIT
NUMBERED SIGNIFIES THAT I AM REFERRING THIS HONORABLE
COURT TO CONSIDER SAID EXHIBIT THOROUGHLY (WITH THE
CONTENTS OF SAID AFFIDAVIT SWORN UNDER THE PENALTY OF
PERJURY);

EXHIBIT-D: AFFIANT'S "SUPPLEMENTAL MOTION
FOR A EVIDENTIARY HEARING," IN SUPPORT OF PETITIONER'S
CLAIMS AGAINST MR. LAIDLAW FOR "RACIAL DISCRIMINATION,"
"SOLICITATION OF FUNDS" WHILE BEING PAID BY THE CRIMINAL
JUSTICE ACT PROGRAM AND THE REQUEST OF A HEARING AND
PROPER PROCEDURES TO BE TAKEN WITH AFFIDAVITS IN DISPUTES.
PLEASE NOTE, SAID SUPPLEMENTAL MOTION WAS PLED UNDER
THE PENALTY OF PERJURY AS AN AFFIDAVIT. AFFIANT HAS ALSO
ATTACHED TWO (2) NEWSPAPER ARTICLES BY THE USA-TODAY AND
DAILY NEWS COVERING SEN. TRENT LOTT (FORMER MAJORITY

SENATE LEADER," WHO HAD TO STEP DOWN FROM HIS POST FOR UTILIZING "RACIST COMMENTS" AS MR. LAIDLAW HAS DONE. AFFIANT ASSERTS THAT THESE ARTICLES HAVE BEEN PLACED ON THE RECORD FOR "JUDICIAL GUIDANCE" IN HANDLING SAID RACIAL DISCRIMINATION ISSUE IN QUESTION (WHICH COMPELLED MR. LAIDLAW TO HINDER MY DIRECT APPEAL). SEE, (NEWS ARTICLES ATTACHED HEREIN), TO COMPEL THIS HONORABLE COURT TO "DISBAR" MR. LAIDLAW, ESQ. AND ISSUE A PUBLIC APOLOGY FOR RACIALLY OFFENDING MY FAMILY, NEW YORKERS OF MY RACE/COLOR AND ME, ETC;

EXHIBIT-E: AFFIANT HAS SUBMITTED HEREIN A VOLUME OF AFFIDAVITS PURSUANT TO RULE 59(c), F.R.Civ.P., WHICH "COMPELS" THE GOVERNMENT TO FILE ITS "OPPOSING AFFIDAVITS WITHIN '10 DAYS' OF FILING," IN SUPPORT OF AFFIANT'S NEW TRIAL MOTION, AND THE AFFIDAVITS AND D.E.A. TASK FORCE DEPUTIZATION PROCEDURES ACQUIRED VIA, THE FREEDOM OF INFORMATION PRIVACY ACT AND SAID AFFIDAVITS ARE AS FOLLOWS:

E.1- A LETTER IN SUPPORT OF A CONVERSATION AFFIANT HAD WITH MS. FELICIA STEWART (GOVERNMENT WITNESS), EXPRESSING HOW SAD SHE FELT FOR LYING TO THE JURY ALLEGING THAT SHE WAS MY "CHILD'S MOTHER", IN ORDER TO GAIN "CREDIBILITY" KNOWING THAT HER SON IS NOT MY SON.., WHICH HAD A MAJOR IMPACT WITH MY CONVICTION;

E.2- AFFIDAVIT OF CO-DEFENDANT, MR. GARY STEWART;

E.3 - COUNTER-AFFIDAVIT OF CO-DEFENDANT, MR. GARY STEWART;

E.4 - A LETTER FROM DISTRICT ATTORNEY, ROBERT E. WILDRIDGE TO MS. KATE ROSENTHAL, ESQ. AND A COPY CARBON COPIED AND FORWARDED TO AUSA, MR. JOHN G. DUNCAN, ESQ., REFLECTING A SECRET MEETING AND AGREEMENT WHICH WILL SOON TRANSPIRE WITH MR. GARY STEWART (AFFECTING MY SEVERANCE ISSUE);

E.5 - A "PROFFER AGREEMENT NEVER DISCLOSED" BETWEEN CO-DEFENDANT, MR. STEWART, HIS TRIAL COUNSEL, MS. ROSENTHAL THEN AND AUSA, MR. DUNCAN DATED MARCH 26, 1991;

E.6 - A "PROFFER STATEMENT SUMMARY NEVER DISCLOSED" BETWEEN CO-DEFENDANT, MR. STEWART, MS. ROSENTHAL AND MR. DUNCAN, DATED APRIL OF 1991, WHICH "HIGHLY IMPACTED" MY SEVERANCE CLAIM ALONG WITH EXHIBIT-E.5;

E.7 - AFFIDAVIT OF MRS. ANDREA FRANCES ROBINSON KEARSE BALLARD (NOW DECEASED);

E.8 - AFFIDAVIT OF CO-DEFENDANT, ROBERT "BAM-BAM" LAWRENCE WITH SUPPORTING TRIAL TESTIMONY TRANSCRIPTS AND LETTERS TO THE HON. NEAL P. McCURN, S.J. AND THE HON. GEORGE LANGE, III FROM THE SECOND CIRCUIT COURT OF APPEALS;

E.9 - MR. ROBERT LAWRENCE'S BAR COMPLAINT UNDER THE PENALTY OF PERJURY AGAINST HIS TRIAL ATTORNEY, MR. JAMES P. McGINTY, ESQ.

E.9½ - AFFIDAVIT OF MS. GWENDOLYN MORROW (MR. LAWRENCE'S GIRLFRIEND ON OCTOBER 30TH, 1990), ATTACHED WITH TWO(2) NEWSPAPER ARTICLES IN SUPPORT OF AFFIANT'S CLAIMS OF FACTUAL INNOCENCE VIA, STATEMENTS FROM THE SYRACUSE POLICE DEPARTMENT OFFICERS AND DEPUTY CHIEF OF POLICE, FRANK SARDINO;

E.10 - AFFIDAVIT OF MS. KATE ROSENTHAL, ESQ. (FORMER TRIAL ATTORNEY OF MR. STEWART);

E.11 - TRIAL TRANSCRIPT REFLECTING WHERE MS. ROSENTHAL IS REQUESTING THAT THE COURT INSTRUCT THE JURY ON THE PINKERTON THEORY WITHIN MR. LAWRENCE'S REQUESTED SELF-DEFENSE, TO ALL DEFENDANTS AND MR. LAIDLAW "DID NOT" OBJECT;

E.12 - AFFIDAVIT OF MRS. CILDA HOWARD (NOT AKIN TO OFFICER HOWARD);

E.13 - AFFIDAVIT OF MAJOR, ISAAC DAVIDSON, JR. (USAF);

E.14 - AFFIDAVIT OF MR. ISAAC DAVIDSON, SR.;

E.15 - AFFIDAVIT OF MRS. SHIRLEY DAVIDSON;

7.

E. 16 - AFFIDAVIT OF MS. JASMIN SANDY;

E. 17 - OFFICER WALLIE HOWARD, JR.'s DEA TASK FORCE DEPUTIZATION REQUEST FORM, CALLED A DEA-481 FORM ATTACHED WITH ITS "CERTIFICATION OF AUTHENTICATION" SHEET; AND

E. 18 - FOIA's REQUEST COMPLETED ACQUIRING A "DEA DEPUTIZATION AND JOINT TASK FORCE POLICIES, PROCEDURES AND/OR REGULATIONS;" CONTRADICTING AGENT WILLIAM R. NELSON'S TRIAL TESTIMONY THAT A DEPUTIZED AGENT (AS OFFICER HOWARD, JR.), CAN BE DEPUTIZED FOR LIFE, WITH FULL AUTHORITY AS A DEA AGENT (WHICH THESE POLICIES PROVES THAT THAT'S FAR FROM THE TRUTH);

EXHIBIT - F: AFFIANT'S PRE-TRIAL "OMNIBUS MOTION" HEARING TRANSCRIPTS "NOTES," AND CERTAIN SPECIFIC ISSUES ARE HIGHLIGHTED AS FOLLOWS:

F. 1 - MR. GARY STEWART'S PRE-TRIAL INQUIRY REGARDING RULE 404(b) EVIDENCES AND RULE 609 MATERIALS, JUST TO KNOW IF HE DECIDED TO TESTIFY ON AFFIANT'S BEHALF, IF CERTAIN CRIMINAL RECORDS WOULD'VE BEEN UTILIZED FOR CROSS-EXAMINATION;

F. 2 - ARGUMENTS ON AFFIANT'S "SEVERANCE MOTION" BASED ON "ANTAGONISTIC DEFENSES" PARTICULARLY;

F. 3 - ARGUMENTS ON "MOTION FOR CHANGE OF VENUE;"

F.4 - CO-DEFENDANT, MR. JUAN MORALES' ARGUMENTS REQUESTING A "SUPPRESSION HEARING" ON HIS STATEMENTS WHICH WERE ALLEGEDLY ACQUIRED VIA, HIS MIRANDA RIGHTS BEING VIOLATED;

F.5 - MR. LAIDLAW INFORMS THE COURT THAT HIS TRIAL DEFENSE FOR AFFIANT WILL BE "ANTAGONISTIC AND/OR AT CONFLICT WITH THE REST OF TRIAL COUNSELS."

EXHIBIT - G: AFFIANT'S LETTER NOTIFYING MR. DAVID A RIGLE, M.D., MS. MARY I. JUMBELIC, M.D. AND THE ONONDAGA DISTRICT ATTORNEY, THAT THEIR "SILENCES" VIA, FAILURES TO RESPOND TO MY INITIAL LETTER WITH ATTACHED EXHIBITS, "CONFIRMS" THEIR KNOWLEDGE THAT OFFICER HOWARD, JR. WAS "NOT" KILLED BY CODEFENDANT, MR. LAWRENCE; AND, A LETTER WITH ATTACHED EXHIBITS OF SAME ADDRESSED VIA, CERTIFIED MAIL TO THE HON. WILLIAM J. BURKE (OF THE ONONDAGA COUNTY COURT), NOTIFYING HIM THAT A FRAUD WAS COMMITTED UPON HIS COURT BY THE ALLEGED FORENSIC SCIENTIST (IMPOSTER), MR. WARREN STEWART BENNETT WHO REPRESENTED THE DEFENSE;

G.1 - A COVER PAGE OF MR. HERBERT LEON MacDONELL, HIGHLIGHTING A VOLUME OF HIGH PROFILE CASES HE WORKED ON;

G.2 - MR. ROBERT H. GOLDBERG, J.D., M.D. RESUMÉ;

G.4 - MR. GOLDBERG, J.D., M.D'S EXCERPTED RESEARCH FROM DR. VINCENT J. M. DiMAIO'S BOOK ON GUNSHOT WOUNDS, IN SUPPORT OF HIS EXAMINATIONS AND FINDINGS ON THE HOWARD CASE;

EXHIBIT-H: A SELF-EXPLANATORY "NOTICE OF ACTION" DIRECTED TO DR. RIGLE AND DR. JUMBELLIC IN SUPPORT OF THE FACT OF THEIR KNOWLEDGE THAT OFFICER HOWARD, JR. WAS KILLED BY HIS OWN FELLOW OFFICERS (AND "NOT" BY MR. LAWRENCE), AND REQUESTING AN AFFIDAVIT FROM THEM IN SUPPORT OF THEIR PERSONAL KNOWLEDGE AND/OR DEGREE OF INVOLVEMENT. AND, FOUND THEREIN, ARE "AFFIDAVITS" FROM THE FOLLOWING INDIVIDUALS AND DOCUMENTS IN SUPPORT OF SAME:

EX.C- STATEMENT OF AFFIRMATION AND AFFIDAVIT BY MR. LOUIS M. FREEMAN, ESQ.;

EX. D- LETTERS IN SUPPORT OF DR. RIGLE'S INITIAL AGREEMENT WITH DR. GOLDBERG AND MS. ANGELA E. BROWN, M. DIV. TO BE "DEPOSED," HIS LETTER LATER DECLINING AND MS. BROWN'S "UNANSWERED" LETTER TO THE HON. McCURN, S.J. REQUESTING A MEETING IN CHAMBERS TO CONVEY THEIR INVESTIGATION'S FINDINGS, ALONG WITH AN AFFIDAVIT FROM "THE REVEREND ANGELA E. BROWN, M. DIV;

EX. E - A LETTER/MEMO FROM MS. MARY I. JUMBELIC, M.D. TO MS. BROWN, CONFIRMING THE ORIGINAL CONCLUSIONS OF OFFICER HOWARD, J.R'S AUTOPSY REPORT;

EX. F - AFFIDAVIT OF MR. ROBERT H. GOLDBERG, J.B. M.D. WITH A LETTER TO MRS. MARIE Y. WATSON, ESQ. DETAILING RAW MATERIALS HE WOULD NEED TO CONDUCT HIS OWN FORENSIC SCIENCE EXAMINATION AND VIDOCQ SOCIETY HISTORY;

10.

EX. G - AFFIDAVIT OF MR. HERBERT LEON MACDONELL WITH SUPPORTING ARTICLE CONFIRMING THAT MR. WARREN STEWART BENNETT IS A FRAUD AND COMMITTED A "RESUMÉ FRAUD" TO BE RETAINED BY THE DEFENSE, TO ALLEGEDLY RECONSTRUCT THE CRIME SCENE WITH OFFICER WALLIE HOWARD, JR.

EX. H - DOCUMENTS IN SUPPORT OF MR. BENNETT BEING PAID BY GOVERNMENT FUNDS..., AND AN AFFIDAVIT BY MS. KATE ROSENTHAL, ESQ.; AND

EX. I - THREE "PRESS RELEASES" BY THE YOUTH TASK FORCE AND ONE (1) "NOTARIZED" BY MS. BROWN, BRINGING TO LIGHT HOW MS. ROSENTHAL "THREATENED HER," THE SAME WAY SHE "THREATENED" HER FORMER CLIENT, MR. STEWART;

EXHIBIT- I : AFFIANT'S URGENT REQUEST FOR A DEPOSITION OF DR. RIGLE, ADDRESSED TO THE HON. McCURN, S.J. TO DATE BEING "UNANSWERED;"

I.1 - A YOUTH TASK FORCE PRESS RELEASE TITLED, "DR. RIGLE ADMITS PROBLEMS IN WALLIE HOWARD INVESTIGATION: JUDGE McCURN STILL DENIES SYRACUSE-5 ACCESS TO COURTS;" AND LETTER IN SUPPORT OF SAME BY MS. BROWN TO THE HON. McCURN;

I.2 - DR. RIGLE'S TESTIMONY IN MR. LAWRENCE'S STATE TRIAL, WHERE THE STATE ASKED HIM TO "ASSUME" IF HOWARD WAS POSITIONED IN SUCH MANNER, IF THAT WOULD BE CONSISTING WITH BEING SHOT BY MR. LAWRENCE

11.

STANDING IN THE RIGHT SIDE OF THE PLYMOUTH HORIZON VEHICLE;

I.3- DR. RIGLE'S TESTIMONY AT AFFIANT'S FEDERAL TRIAL WHERE HE WAS CROSS-EXAMINED AS TO, IF THE BULLET RECOVERED FROM OFFICER HOWARD, JR'S HEAD HAD RICOCHETTED AND IF HE WOULD ASSUME AGAIN, HOWARD'S SEATED POSITION ... CONSISTANT WITH MR. LAWRENCE BEING THE ALLEGED TRIGGERMAN...;

I.4- AT AFFIANT'S FEDERAL TRIAL, DR. RIGLE STATES THAT HE HAS NO KNOWLEDGE IF HOWARD, JR. WAS BURRIED WITH BULLET FRAGMENTS STILL LODGED IN HIS HEAD; BUT, DR. RIGLE DID "ADMIT" TO MS. BROWN THAT HOWARD WAS INDEED BURRIED WITH BULLET FRAGMENTS LODGED IN HIS HEAD;

I.5- STATE GRAND JURY TESTIMONY OF AGENT JOSEPH RUGGIERO, TESTIFYING TO THE POSITION HOWARD WAS FOUND IMMEDIATELY AFTER BEING SHOT; SLUMPED FORWARD AND SITTING LIKE A NORMAL PERSON/POSITION;

I.6- AGENT RUGGIERO'S TESTIMONY AT MR. LAWRENCE'S STATE TRIAL, STATING WHAT POSITION OFFICER HOWARD, JR. WAS FOUND AFTER BEING SHOT;

I.7- LETTERS FROM MS. MARIE Y. WATSON, ESQ. TO DR. JUMBELLIC, FIRST FORWARDING A COPY OF HOWARD'S BALLISTICS REPORT AND REQUEST HER WRITTEN REPORT AFTER EXAMINING HOWARD'S RECORDS;

I.8- VARIOUS NEWSPAPER ARTICLES FROM THE CITY OF SYRACUSE, N.Y. REGARDING CORRUPTION WITH THE PROSECUTORS AND FORENSIC SCIENTISTS BEING TOLD HOW TO TESTIFY FALSELY IN FAVOR OF THE STATE/GOVERNMENT;

I.9- URGENT NOTICE TO ONONDAGA COUNTY DISTRICT ATTORNEY TO RESPOND TO AFFIANT'S LETTER WITH ATTACHED EXHIBITS AND SILENCE WOULD BE TAKEN AS CONCESSION THAT OFFICER HOWARD, JR. WAS KILLED BY HIS OWN FELLOW PARTNERS;

I.10- LETTER WITH SUPPORTING DOCUMENTS TO THE HON. McCURN TITLED, "URGENT NOTICE REFLECTING FACTUAL DISPUTES," STEMMING FROM THE GOVERNMENT'S OCTOBER 25th, 2002 RESPONSE TO THE SECOND CIRCUIT'S ORDER OF REMAND;

I.11- AFFIANT'S LETTER TO MR. DUNCAN IN GOOD-FAITH, REQUESTING THAT THE GOVERNMENT RECONSIDER'S ITS PREVIOUS POSITION WITH SUPPORTING DOCUMENTATIONS;

I.12- A CHAMPION MAGAZINE JOURNAL WITH AN ARTICLE TITLED, "DAUBERT CHALLENGES TO FORENSIC EVIDENCE: BALLISTICS NEXT ON THE FIRING LINE," IN SUPPORT OF AFFIANT'S CASE ON BALLISTICS CONSISTANT WITH DR. GOLDBERG'S AFFIDAVIT AND LETTER TO MS. WATSON, ESQ. AT EXHIBIT-H (EX. F) HEREIN, STATING THAT "ALL 14 OFFICERS SERVICE WEAPONS" SHOULD HAVE BEEN TESTED TO ACQUIRE A PROPER BALLISTICS/WEAPONS REVIEW;

13.

EXHIBIT-J: AFFIANT'S LETTER TO THE FORMER U.S. ATTORNEY, HON. JOSEPH PAVONE WITH VOLUMINOUS STATE (PRE-TRIAL HEARINGS TRANSCRIPTS), IN SUPPORT OF MR. BENNETT'S FRAUDULENT REPRESENTATION TAMPERING WITH CRITICAL EVIDENCE AND AFFIANT'S REQUEST FOR AN INVESTIGATION AND HIS "SILENCE" WOULD ALSO BE TAKEN AS A CONCESSION THAT OFFICER HOWARD, JR. WAS KILLED BY HIS OWN FELLOW PARTNERS AND THE GOVERNMENT HAS PERSONAL KNOWLEDGE OF SAID CRIME;

EXHIBIT-K: AFFIANT'S NOVEL "AFFIDAVIT OF JUROR ... IN A QUESTIONNAIRE FORMAT," TO BE HANDED TO EACH JUROR DURING A "CANVASING JUROR PROCEEDING" BEFORE THE DISTRICT COURT AND ACQUIRE THEIR RESPONSES FOR THE RECORD SAKES AFTER LISTENING TO ALL OF AFFIANT'S "NEWLY DISCOVERED EVIDENCES;"

K.1 - AFFIANT'S DRAFT OF JUROR'S SEATED POSITIONS, ALONG WITH THEIR NAMES AFTER BEING POLLED;

K.2 - A SYRACUSE HERALD-JOURNAL NEWSPAPER ARTICLE DATED, FRIDAY, FEBRUARY 26TH, 1993, REFLECTING VARIOUS COMMENTS FROM PETITIONER'S TRIAL JURORS, AS TO WHAT THEY THOUGHT WAS DAMAGING AGAINST AFFIANT AND THE TRIAL OVERALL; AND

14.

K.3 - EXCERPTS FROM AFFIANT'S INITIAL "MOTION FOR RECONSIDERATION...," DATED DECEMBER 28TH, 2000, COVERING VARIOUS JURORS COMMENTS AS TO AFFIANT AND WHAT THEY SAW TO BE THE "DAMAGING EVIDENCE(S)" AGAINST PETITIONER....

8. THAT AFFIANT ASSERTS THAT I WOULD LIKE TO INCORPORATE ALL THE FACTS SUBMITTED IN EXHIBITS -B, C, D AND PETITIONER'S "MOTION FOR NEW TRIAL...," WHICH HAS BEEN PROPERLY PREPARED IN AFFIDAVIT FORMAT (SWORN UNDER THE PENALTY OF PERJURY, PURSUANT TO TITLE 28 U.S.C. §1746), TO THE PRESENT AFFIDAVIT, NOT TO BE "REDUNDANT" WITH ALL/SOME OF THE FACTS ALREADY CONTAINED THEREIN; AND

9. IN CLOSING, AFFIANT WOULD LIKE TO ASSERT (AND REQUEST AT THE SAME TIME), THE LETTER THAT MR. JOHN FORD LAIDLAW, ESQ. HAD MAILED ME WHILE BEING HOUSED AT "FCI RAYBROOK" ON OR AROUND MARCH OF 1993, STATING THAT ONE OF THE JURORS ON MY TRIAL'S PANEL STATED TO HIM THAT, "IF IT WASN'T FOR ROBERT LAWRENCE'S TRIAL TESTIMONY, WE WOULD 'NOT' HAVE FOUND MR. DAVIDSON GUILTY." AFFIANT ASSERTS THAT THIS WAS THE LETTER I SLID UNDER MR. LAWRENCE'S CELL DOOR WHILE ALL OF US (MY CO-DEFENDANTS) WERE BEING HOUSED AT FCI RAYBROOK AND AFTER MR. LAWRENCE READ THE CONTENTS OF SAID LETTER, IT INFURIATED ME AND HE BEGAN TO EXPLAIN THE CONTENTS OF HIS AFFIDAVIT. AND, MR. LAWRENCE ASSERTED THAT HE WAS GOING TO CONTACT HIS ATTORNEY, MR. McGINTY TO CORRECT THE TRIAL

15.

ECORD BECAUSE MR. McGINTY HAD "LIED TO HIM" AND SET HIM UP" AS HE EXPLAINED IN HIS AFFIDAVIT. HE LETTER MR. LAWRENCE ADDRESSED TO THE HON. McCURN, S.J. SUPPORTS HIS INTENTIONS THAT HIS RIAL TESTIMONY WAS BASICALLY GUIDED UNDER THE UPERVISION OF MR. MORALES AND MR. McGINTY ETC., N GOOD-FAITH, "ONLY" FOLLOWING THE "LEGAL ADVISES" F TRIAL ATTORNEY (WHO UTILIZED MR. LAWRENCE'S YOUNG GE AS MEANS TO DECEIVE AND MANIPULATE HIM, DUE O HIS INEXPERIENCE MIND).

I, JAIME A. DAVIDSON, AFFIANT, PRO-SE, EREBY CERTIFY AND SWEAR UNDER THE PENALTY OF ERJURY (PURSUANT TO TITLE 28 U.S.C. §1746), HAT ALL THE FACTS MENTIONED HEREIN AS A HOLE AND CONTAINED IN AFFIANT's VOLUMINOUS XHIBITS A-K, ARE ALL TRUE AND/OR CORRECT O THE BEST OF MY CLEAR RECOLLECTION AND ERSONAL KNOWLEDGE. AND, AFFIANT IS WILLING AND BLE TO TESTIFY TO THE AFOREMENTIONED IN ANY .A.S. DISTRICT COURT AND/OR EVIDENTIARY HEARING.

XECUTED ON THIS ___9___ DAY OF __JANUARY__ ,2003.

RESPECTFULLY SUBMITTED,

_Jaime A. Davidson_
SIGNATURE OF AFFIANT

16.

"ATTACHMENTS"

"USA TODAY hopes to serve as a forum for better understanding and unity to help make the USA truly one nation."
—Allen H. Neuharth, Founder, Sept. 15, 1982

**President and Publisher:** Tom Curley

Editor: Karen Jurgensen
Executive Editor: Brian Gallagher
Editor, Editorial Page: Carol Stevens
Managing Editors:
News: Hal Ritter  Money: John Hillkirk
Sports: Monte Lorell  Life: Susan Weiss
Graphics & Photography: Richard Curtis

Senior Vice Presidents: Advertising, Jacki Kelley;
Circulation, Larry Lindquist  Electronic, Jeff Webber
Vice Presidents:
Finance, Myron Maslowsky;
Human Resources, Janet Richardson,
Information Technology, John Palmisano;
Marketing, Melissa Snyder; Production, Ken Kirkhart

# Senate post change presents chance to bridge racial divide



By Gregg Newton, Reuters
**Sen. Frist, R-Tenn.**

With lightning speed rare for the deliberative Senate, Republicans are dashing to proclaim Sen. Bill Frist of Tennessee as their new majority leader today. All the better, they reckon, to get the embarrassing flap over deposed leader Trent Lott behind them and minimize the long-term damage his pro-segregation remark might cause the party.

Yet Lott did the GOP and the nation a valuable if unintended favor — at the cost of his leadership post Friday — by wistfully recalling a time in the not-too-distant past when racial separation was shamefully embraced in the USA. His words are a reminder that the nation's history of race relations remains marred by festering wounds still in need of healing.

The challenge facing Republicans now is to show through actions beyond replacing Lott that they are committed to ending racially divisive politics, an ugly tactic both parties have employed in the past.

Lott's downfall was caused by the Mississippian's seeming embrace of that history. At the 100th birthday party for retiring Sen. Strom Thurmond, R-S.C., on Dec. 5, Lott suggested that the country would have been better off had Thurmond won his 1948 presidential election as a segregationist.

At the time, Thurmond was a renegade Democrat who opposed President Harry Truman's push to end nearly a century of legal segregation after the Civil War. Blacks lacked full voting rights, were denied education and job opportunities, forbidden to mix with whites in public and terrorized by lynchings. The Democratic Party courted Southern segregationists to win national elections and control Congress.

As the civil rights movement spread in the 1960s, Republicans opportunistically went after the votes of disaffected whites. The GOP laid the cornerstone of its current coalition by using race-baiting code words such as "state sovereignty" and "our way of life." In the process, Republican support among blacks, once more than 40%, dropped to 8% in the 2000 presidential election.

President Bush, whose condemnation of Lott's remarks on Dec. 12 sparked the drive to dump the GOP leader, has pledged to widen his party's base to include more minorities. Fulfilling that goal, however, requires the president and Republicans in Congress to rethink their agenda for next year.

After capturing control of the Senate in the Nov. 5 election, the GOP had planned to capitalize on its success by pushing for the appointment of more conservative judges and new tax cuts mainly benefiting upper-income Americans. Now, national sensitivity about race prompted by Lott's comments is putting those policies under new scrutiny to see if they advance Bush's stated goal of ensuring equal opportunity for all or merely play to bigoted voters.

Frist, Bush's personal choice to succeed Lott as Republican leader, gives the president the sway with Congress to see that an inclusive agenda is adopted.

Likewise, Democrats need to show a new flexibility in working with Bush on programs aimed principally at helping minorities, such as his school reform proposals.

In such ways, both parties can help the nation overcome its bitter racial divide. That is too important a goal to be quickly forgotten along with the Lott controversy.

---

**Today's debate: Wall Street abuses**

# Investors need federal help

# He'll need Lotts of luck now

## Challenge in Senate

By KENNETH R. BAZINET and THOMAS M. DeFRANK
Daily News Washington Bureau

WASHINGTON — President's Bush's handpicked choice to run the GOP-led Senate all but announced his candidacy yesterday — even as embattled Sen. Trent Lott told colleagues he has the votes to keep his job.

Tennessee Sen. Bill Frist said several colleagues are asking his permission to push his candidacy.

"I indicated to them that if it is clear that a majority of the Republican caucus believes a change in leadership would benefit the institution of the United States Senate, I will likely step forward for that role," Frist said in a statement.

The former heart-lung transplant surgeon stopped just short of a formal declaration, but three other sources told the Daily News that Frist would officially declare a challenge to Lott within days.

"He's going," a prominent Republican said, "and that's the beginning of the end" for Lott (R-Miss.)

### Taking sides

Sen. Don Nickles (R-Okla.), a longtime Lott antagonist who has lusted after the leader's job for years, will throw his support behind Frist.



Sen. Bill Frist

Frist's remarks were a critical blow to Lott because he is widely known to be Bush's candidate, making it difficult for senators to buck the White House by sticking with Lott.

A Lott spokesman declined comment, but a GOP source close to the beleaguered senator said, "Sen. Lott has a tremendous amount of support from his colleagues and should not be underestimated."

Even before Frist's announcement, Lott was telling colleagues that a poll of 50 GOP senators showed he had the votes to remain majority leader, sources said. But that rosy assessment was dismissed by Republican sources in the White House and on Capitol Hill who contend Lott was lethally damaged by remarks two weeks ago that the country would have been better off if retiring Sen. Strom Thurmond (R-S.C.) had won the 1948 presidential election.

"I don't think Trent survives this," said a veteran congressional official with close ties to Lott and the White House. "But I think he doesn't know it yet." There's a growing consensus inside the party that if Lott does defy political gravity and hangs on to his post, "It would be bad, bad, bad for the party and the President."

Lott remained secluded in Mississippi yesterday, and allies said he plans to keep a low profile in hopes the calls for his scalp will fade over the holidays.

"As long as he keeps his mouth shut and stops giving critics a new target, the drip-drip-drip should begin to stop," a congressional source said.

But it didn't yesterday. Even before Frist's blockbuster, two more conservative GOP senators, Wyoming's Craig Thomas and Oklahoma's Jim Inhofe, criticized Lott. Inhofe pegged Lott's odds at surviving at 30%.

## Half of Americans think he's gotta go

Despite his multiple apologies, nearly half of Americans think Sen. Trent Lott's praise of Sen. Strom Thurmond was racist and that he should quit as Republican leader, a poll shows.

But a Time magazine/CNN survey released yesterday found that most people believed that Lott didn't realize his comments were offensive. Only 22% said the Mississippi senator intentionally made racist comments.

Those polled also were split on a Senate penalty, with 49% favoring a formal censure for comments Lott made praising Thurmond's presidential ambitions a half-century ago. But 40% opposed any Senate action.

Leo Standora

DAILY NEWS

Friday, December 20, 2002