Stricken
2/19/03

JAN 2 1 2003

U.S. DISTRICT COURT — N.D. OF N.Y.

**FILED**

O'CLOCK
Lawrence K. Baerman, Clerk — Syracuse

117

EXHIBIT — A

5:00 cv 869

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JAIME A. DAVIDSON,                    )
                                      )
          Petitioner,                 )
                                      )
                                      )     CIVIL NO. 5:00-CV-869(NPM)
          -vs-                        )     CRIM. NO. 92-CR-35
                                      )     APPEAL NO. 01-2370
                                      )
UNITED STATES OF AMERICA              )
                                      )
          Respondent.                 )
_____/

MOTION REQUESTING LEAVE TO RE-SUBMIT PETITIONER'S
"AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN,
S.J.'s RECUSAL," LEAVE TO "STAY" THE PROCEEDINGS TO
HOLD AN "EVIDENTIARY HEARING" UNTIL THE FINAL
DISPOSITION ON THE MERITS OF THE PRESENT RECUSAL
MOTION/AFFIDAVIT, LEAVE TO FILE A TRAVERSE MOTION
UPON THE GOVERNMENT'S RESPONSE, AND LEAVE TO RECONSIDER
PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND
SUPPLEMENTAL MOTION OF SAME, TO PREVENT ANY FURTHER
MISCARRIAGE OF JUSTICE OF A PRISONER WHO IS ACTUALLY
(FACTUALLY) INNOCENT

TO THE HONORABLE JUDGE OF SAID COURT;

MAY IT PLEASE THIS COURT:

Comes Now, Petitioner, Jaime A. Davidson, Pro-Se, (and
referred to herein as Petitioner), bringing forth the instant
motion in the above styled cause, humbly praying and/or
respectfully requesting that this Honorable Court thoroughly
reviews the instant motion as a whole and GRANTS the same. In
support thereof, Mr. Davidson, Pro-Se, to wit, states as follows:

     1. Mr. Davidson, Pro-Se, in a good-faith, novel and timely
manner with extreme due diligence, humbly submits the instant

EXH. A

1 motion pursuant to the standards set forth by the Supreme Court

2 in **Haines v. Kerner**, 92 S. Ct. 594 (1972), to review Pro-Se,

3 litigant's motions liberally and not as a trained licensed

4 attorney;

5     2. In light of the fact that the Hon. Neal P. McCurn, S.J.

6 since February 5th, 2002, to date, has intentionally declined to

7 consider on its merits and/or pass on to another judge for

8 consideration on its merits, Mr. Davidson's "Affidavit in support

9 of the Honorable Neal P. McCurn, S.J.'s Recusal," Petitioner

10 hereby humbly request leave to be granted from this Honorable

11 Court to "Re-Submit" said affidavit/motion of recusal in question;

12     3. Petitioner submits that on May 20th, 2002, via, a letter,

13 the Deputy Clerk, Terry J. Mitchell informed Mr. Davidson that,

14 "your most recent motions filed on April 22, 2002 are still

15 pending before Judge McCrun. They include your motion to respond

16 to the 'Affidavit of Recusal of the Honorable Neal P. McCurn, S.J."

17 **See**, (**Exhibit-1**);

18     4. Petitioner further submits that, the Second Circuit's

19 Order dated June 12th, 2002, in Case No. 01-3035, where the

20 Justices Denied his request of the "Recusal of Judge McCurn from

21 presiding over his habeas motion," literally has no bearing with

22 the instant affidavit/motion of recusal in question. The record

23 should reflect that Case No. 01-3035 had been pending since June

24 of 2001 until June 12th, 2002, where Petitioner had basically

25 added on said section for recusal around the conclusion of said

26 motion; and, it should also be noted that, "without" any ruling

27 held on the merits from the District Court concerning Petitioner's

28

motion for recusal, the Second Circuit would lack subject matter jurisdiction to render a decision on said affidavit/motion of recusal in question. <u>SEE</u>, (Exhibit-2);

5. Mr. Davidson is hereby respectfully requesting further leave to "stay" the entire proceedings pending in Civil No. 5:00-CV-869 (NPM) and the discrete issues on remand from the Second Circuit on Appeal No. 01-2370, to hold an immediate evidentiary hearing, until the final resolution/disposition on the merits of the present recusal motion/affidavit; <u>See</u>, (Exhibit-3);

6. In <u>U.S. v. Barnes</u>, 909 F.2d 1059 (7th Cir. 1990), the Court found, "Judge Moody's refusal to hold a hearing on the recusal motion was based on his determination that Barnes had failed to comply with both the procedural and substantive requirements of Section 144, "which in Mr. Davidson's case, the record is explicitly clear that Petitioner has overwhelmingly satisfied both requirements of section 144, (and the requirements in Section 455 (a)), as stated in <u>Barnes.</u> <u>See also</u>, <u>U.S. v. Vespe</u>, 868 F.2d 1328 (3rd Cir. 1989);

7. In the case at bar, the Hon. McCurn has violated the Court's own rules, regulations and/or procedures, especially where Section 144 states in pertinent part that:

> "Whenever a party to any proceeding in a District makes and files a timely and sufficient affidavit that the Judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, 'such Judge <u>shall proceed no further therein,</u>' another Judge shall be assigned' to hear such proceedings."

<u>Id.</u> 28 U.S.C. § 144; <u>U.S. v. Hanhardt</u>, 134 F. Supp. 2d 972, 977 (N.D. Ill. 2001).

8. Petitioner asserts that the Hon. McCurn's refusal to disqualify himself from the case at bar, stems from the "personal bias or prejudice against Mr. Davidson and in favor of the adverse party" [as here, the government (Mr. John G. Duncan, Esq. and Mr. Grant Jaquit, Esq.,)], and due to the Hon. McCurn's "impartiality which might reasonably be questioned," creating the so-called "appearance of justice" rule; **i.e.,** declining to hand down a "Denial Order" on the merits of said recusal affidavit/motion pursuant to 28 U.S.C. §§144 and 455(a), has hindered Petitioner's due process rights to file a writ of mandamus compelling the higher Court, to order the Hon. McCurn to recuse/disqualify himself from the pending proceedings;

9. The Second Circuit has long since taken the position that there are "few situations more appropriate for mandamus than a Judge's clearly wrongful refusal to disqualify himself." **Rosen v. Sugarman**, 357 F.2d 794, 797 (2nd Cir. 1966); **In Re International Business Machines Corps.**, 618 F.2d 923, 927 (2nd Cir. 1980) (a claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits. We conclude that we have the power to issue the writ but only if the Petitioner has satisfied the burden of establishing that its right is "clear and indisputable."). **See,** (Attached, Affidavit of Mr. Davidson in support of the instant motion);

10. Moreover, Mr. Davidson further asserts that, "the alleged

bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the Judge has learned from his participation in the case." <u>Id.</u> <u>See</u>, <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 583, 86 S. Ct. 1698, 1710, 16 L.Ed 2d 778 (1966); <u>U.S. v. Merkt</u>, 794 F.2d 950, 960 (5th Cir. 1986) (under both §144 and § 455, the alleged bias or prejudice <u>must</u> be personal and it <u>must</u> stem from an extrajudicial source which would result in an opinion on the merits on some basis other than what the Judge learned from his participation in the case). <u>See also</u>, <u>United States v. Reeves,</u> 782 F.2d 1323, 1325 (5th Cir. 1986);

11. Petitioner submits that, the record should reflect where the discrete issues on remand by the Second Circuit of Mr. Davidson's issues of ineffective assistance of counsel, were only a result from the Hon. McCurn's <u>"Ex-Parte Communication"</u> to Mr. Louis M. Freeman, Esq. attempting to authenticate his "statement of affirmation" which was indeed his (Mr. Freeman's) own.  The Hon. McCurn, to denie Petitioner's reconsideration motion which was on remand, did not stem from what he learned from his own personal participation in the case, but what he (the Hon. McCurn, S.J.), learned via his ex-parte contact to Mr. Freeman, Esq.; and, which since around January 10th, 2001, to date, the Hon. McCurn has declined to place it on the record for a thorough judicial review (tarnishing the appearance of justice);

12. However, absent proof of personal bias, we remand to a new Judge only under extreme circumstances [as in the instant matter at hand with Mr. Davidson, <u>Pro-Se</u>,]. <u>O'Rourke v. City of Norman,</u>

875 F.2d 1465, 1475 (10th Cir. 1989).  And, the Ninth Circuit in

**United States v. Sears, Roebuck & Co.**, 785 F.2d 777, 780 (9th Cir.

1986), held that, "reassignment is admissible to preserve the

appearance of justice;" accord **United States v. Arnett**, 628 F.2d

1162, 1165 (9th Cir. 1979); **United States v. Robin**, 553 F.2d 8, 10

(2nd Cir. 1977) (En Banc);

    13. In the instant matter at hand, Mr. Davidson asserts that the

procedures utilized in **O'Keefe**, should also be enforced herein and

which was held that:

> "Under § 455(a), grounds for a Judge to disqualify himself
> arise whenever his impartiality might reasonably be
> questioned; and, even if the Judge was not aware of the
> circumstances creating an appearance of partiality when it
> occurred, once he realizes that the impropriety existed he
> is called upon to take steps necessary to maintain public
> confidence in the impartiality of the judiciary; In a
> proper case, the Judge may be obliged to disqualify
> himself retroactively and to vacate any orders entered
> during the time that a reasonable person would harbor
> doubts about the Judge's impartiality. **Liljeberg,** 486 U.S.
> at 860-61, 108 S. Ct. 2194."

**Id.** at **U.S. v O'Keefe**, 169 F.3d 281, 289 (5th Cir. 1999).

    14. Further, once the area for use of the prerogative writs is

recognized to be not so narrowly restricted, we can think of few

situations more appropriate for mandamus than "a Judge's clearly

wrongful refusal to disqualify himself" (as in the case at bar, with

the Hon. McCurn, S.J. who continuously declines to rule on Mr.

Davidson's pending Affidavit of Recusal since February 5th, 2002).

**Id.** at 797; **U.S. v. Horton**, 98 F.3d 313, 317 (7th Cir. 1996) (the

denial of a request that the Judge recuse himself under Section 455

(a) **must** be appealed immediately by application for writ of mandamus

or it is waived).  Thus, the Second Circuit in **Rosen**, ruled at length

in an explicit reasoning the following:

> "The very special, challenging and often sensantional charge of partiality in the administration of justice which is initiated by a formal affidavit of prejudice against a Judge should receive final adjudication at first opportunity, if only in the interest of public confidence in the Courts.  Moreover, a trial [or habeas proceeding like Petitioner's] is not likely to proceed in a very satisfactory way if an unsettle claim of judicial bias is an ever present source of tension and irritation [as in the case at bar, between the Hon. McCurn and Mr. Davidson].  Only a final ruling on the matter by a disinterested higher Court before trial [or before a ruling is handed down in a habeas corpus proceeding] can dispel this unwholesome aura.  Thus, if an Appellate Court refuses when properly petitioned, to prevent a disqualified Judge from trying a case, or to say that the challenged Judge is not disqualified, this postponement of decision hurts the administration of justice, even though the Court reserves the right to pass upon the matter after the trial [or after a habeas proceeding is concluded].  Such considerations far outweigh the objections to piecemeal appeals which ordinarily militate against deciding on mandamus [or again, after a habeas proceedings is concluded]...."  _Green v. Murphy_, _Supra_, 259 F.2d at 595 (Hastie, J., Concurring).

_Id._ at 797.

15. Petitioner, _Pro-Se_, asserts the fact that he has overwhelmingly proven that, "recusal under § 144 requires a negative bias or prejudice, or some personal animus or malice on the part of the Judge, 'of the kind that a fair minded person could not set aside....*'" _Id._ at 977.  See, _Balistrieri_, 779 F.2d at 1201.  See also, (Mr. Davidson's affidavit in support of the instant motion);

16. Now, Mr. Davidson, _Pro-Se_, in light of the present motion as a whole, respectfully requests for this Honorable Court to "Grant" Petitioner "Leave to File a Traverse Motion" upon the government's response to the issues specifically remanded from the Second Circuit, due to extraordinary circumstances beyond Mr.

Davidson's control, based on the complexity, sensitivity and voluminous nature of the case at bar (with overwhelming facts outside the courtroom and/or record);

17. Moreover, Petitioner further request that this Honorable Court grant Mr. Davidson "30 days" extension of time, to properly prepare and submit Petitioner's Traverse Motion" upon the government's response around September 28th 2002;

18. Nevertheless, Mr. Davidson submits that, for the best interest of justice, this Honorable Court should also "specifically order" the government to respond to, Petitioner's "motion for evidentiary hearing with attached exhibits and supplemental motion of same," which holds weight on various issues the Second Circuit considered and rendered their decision on remand;

19. Petitioner states that declining to grant an order allowing Mr. Davidson, Pro-Se, his constitutional rights to due process and equal protection to file a Traverse Motion after the government's response, will surely cause a fundamental miscarriage of justice on a prisoner who is actually (factually) innocent.  Thus, granting Petitioner the right to file a Traverse Motion would allow Mr. Davidson to clarify the present conflicts/disputes surrounding the issues in question upon the government finally holding a position;

20. Now, Petitioner humbly request leave from this Court to "Reconsider" its September 6th, 2002, Order, denying Mr. Davidson's motion for evidentiary hearing and supplemental motion of same, in such a pre-mature manner (without ordering the government to also respond to the relevant claims/facts contained therein, consistent with the Second Circuit's June 12th, 2002, discrete issues on reman

1 | in Appeal No. 01-2370: See, (Attached Affidavit of Petitioner);

2 |     21. Mr. Davidson, <u>Pro-Se</u>, respectfully submits the present

3 | motion to reconsider the denials of Petitioner's motion for

4 | evidentiary hearing and supplemental motion of same, in good-faith,

5 | pursuant to Rule 60(b), F.R. Civ. P.. Rule 60(b) provides that a

6 | District Court may relieve a party from a final Judgment or Order

7 | for, among other things, "excusable neglect, new intervening change

8 | in the law, new discovered evidence, fraud or any other reason

9 | justifying relief from the operation of the judgment." Fed. R. Civ.

10 | P. 60(b)(1)(2)(3) & (6);

11 |     22. Petitioner's request for the present motion to be

12 | reconsidered, is being submitted in light of points 1,2,3 and 6 of

13 | Rule 60(b);

14 |     23. Petitioner further submits that the present request to

15 | reconsider Mr. Davidson's denial of his "motion for evidentiary

16 | hearing... and supplemental motion of same," is being presented to

17 | this Honorable Court, in light of a "new intervening change in the

18 | law and/or newly discovered evidence" (which also equally applies

19 | to denials of federal prisoner's habeas petition); and, in support

20 | of Petitioner's request to relieve Mr. Davidson from said pre-mature

21 | Order in question by the Hon. McCurn, S.J., dated September 6th,

22 | 2002, the Second Circuit has ruled (and developed) a new <u>"meaningful</u>

23 | <u>review"</u> which held as follows:

24 |         **"Regardless of whether a District Judge's 'ultimate decision turns on factual determinations or on a**

25 | **choice between competing legal principles or on the manner in which the legal principles are applied to**

26 | **the facts, the District Court <u>must</u> provide an indication of <u>rationale</u> that is <u>sufficient</u> to permit**

27 | **<u>meaningful appellate review.</u>"**

28 |

"Accordingly, although we will proceed with review
of a District Court's decision even where it lacks
adequate findings 'if we are able to discern enough
solid facts from the record to permit us to render
a decision,'... We, like other Appellate Courts,
have <u>remanded</u> to the District Court, in both Civil
and Criminal Cases, and on all manner of issues,
for further findings or for clarification when the
<u>record was insufficiently clear</u> to permit us to
determine the basis for the District Court's decision,"
the Court noted, a District Judge's specification
of the grounds for denying a petition is <u>'especially
necessary,'</u> the Court said, where the <u>'petitioner
is not represented by counsel.'"</u>

"In sum, we reject the view of Chief Judge Korman and
Judge Trager that the Federal Courts of Appeals have
no authority to instruct the District Courts to
include in their rulings <u>sufficient explanation</u> to
permit a <u>meaningful evaluation of their decisions</u> and
<u>meaningful appellate review</u>," the Court said.  It
added that '[w]e do presume that the District Judge
has given each matter personal attention.  What we
do not presume, consistent with our own responsibilities,
is the <u>correctness of an unexplained decision</u> rendered
on a <u>record that is inadequate to reveal the decision's
rationale.</u>"

<u>Id.</u> <u>Rudenko v. Costello</u>, 286 F.3d 51 (2nd Cir. 2002); <u>Clanton v.

U.S.</u>, 284 F.3d 420 (2nd Cir. 2002).

    24. Petitioner states that, it should be noted explicitly

where the Hon. McCurn's pre-mature Order rendered prior to the

government's response due on September 28th, 2002, omitted any

and/or all mention of the Court's decision rationale (giving

sufficient explanation to permit a meaningful evaluation of the

Court's decision to fully execute a meaningful appellate review),

with a thorough, fully exhausted and complete "findings of fact and

conclusions of law." <u>See</u>, (Exhibit-4));

    25. Mr. Davidson, <u>Pro-Se</u>, asserts the fact that while the Hon.

McCurn acknowledged that the facts and law supported Petitioner's

claims warranting immediate habeas relief, the Hon. McCurn, S.J.
handed down a bare-bone and self-serving ruling against Petitioner
(without any findings of fact and conclusions of law being issued);
and, muchless, without ordering the government to respond to either
motions for evidentiary hearings, in its September 6th, 2002, Order
alleging the following:

> **"The matters as to which petitioner seeks an evidentiary
> hearing, as recited in his moving papers and attached
> exhibits in support of said motions, are extraneous to
> the discrete issues presented to this Court in the
> mandate of the Court of Appeals. Accordingly, after
> due consideration, the petitioner's motions for an
> evidentiary hearing are hereby denied."**

**Id.** at page 2. (District Court's Sept. 6th, 2002 Order). **See also,**
(Mr. Davidson's Affidavit in support of the instant motion);

   26. In the case at bar, a grave miscarriage of justice will
occur if this Honorable Court denies Petitioner (who is acting Pro-
Se, as his own counsel of record and conducting his own independent
investigation with the Youth Task Force (legal organization in
charge of said investigation)), an evidentiary hearing in light of
Mr. Davidson's affidavit/motion of recusal and newly discovered
evidence intentionally withheld from Appellate Counsel, which
hindered Petitioner's Direct Appeal;

   27. Moreover, an evidentiary hearing should be ordered in light
of the fraud committed upon the Court and newly discovered evidence(s)
etc. (which falls under the Second Circuit's discrete issue on remand
numbered two (2)), based on the fact that the Hon. McCurn, S.J. has
gone way beyond himself and in full violation of his oath of office
as a "judicial officer," becoming "an accomplice" to the fraud
committed upon the Court. And, in light of said judicial misconducts,

1 since February 5th, 2002, to date, the Hon. McCurn continues to

2 refuse to recuse himself pursuant to Title 28 U.S.C. §§ 144 and 455

3 (a). **See**, (Exhibits-5); and

4     28. In support of Petitioner's request for reconsideration of

5 the District Court's denials of Mr. Davidson's "motion for

6 evidentiary hearing and supplemental motion of same," (which contains

7 two (2) critical issues "extremely relevant with point no. 2" of the

8 Second Circuit's discrete remand in Appeal No. 01-2370 dated

9 June of the 12th, 2002, which deals with Mr. John F. Laidlaw, Esq's

10 "racist acts/mind-set," addressing Mr. Davidson and his family as

11 "you people," and "robbing his family after soliciting funds" to

12 allegedly conduct an adequate investigation and trial representation

13 (while being paid under the Criminal Justice Act which calls for

14 said attorney's immediate disbarment). **See**, (Mr. Davidson's

15 affidavit in support of the instant motion).

16            **PETITIONER'S PRAYERFUL RELIEF REQUESTED**

17     **A.**  Grant leave to "Re-Submit" Petitioner's "Affidavit in

18 Support of the Honorable Neal P. McCurn, S.J.'s Recusal;

19     **B.**  Grant leave to "Stay" the present proceedings to hold an

20 immediate "evidentiary hearing" until the final disposition on the

21 merits of the present recusal motion/affidavit (compelling the Hon.

22 N. McCurn, S.J. to also hold a factual and legal authoritive position

23 as to his reasons for executing said "Ex-Parte Communication") and to

24 date, declining to place it on the record for Petitioner's thorough

25 appellate review;

26     **C.**  Grant Petitioner leave to file a "Traverse Motion" upon the

27 government's response with "a 30 day extension of time," due to the

28

complexity, sensitivity and voluminous nature of the case at bar with exceptional circumstances;

D.  Grant leave to "Reconsider" Petitioner's motion for evidentiary hearing and supplemental motion of same," and specifically "Ordering the Government to Respond," to said motions (in respective to the facts in support of the discrete issues 1 and 2 remanded by the Second Circuit), and further supported by "Mr. Davidson's present Affidavit in further Support of the instant motion" (in conjunction with Petitioner's letter dated September 16th, 2002, addressed to the Hon. Joseph Pavone, United States Attorney"), to prevent any further miscarriage of justice of a prisoner who is actually (factually) innocent, of the assassination/ murder" of Syracuse Police Officer, Wallie Howard, Jr, committed and suppressed by his own fellow officers, the government and the Hon. McCurn, S.J. etc.;

E.  Grant Mr. Davidson's request to "Consolidate" Petitioner's Motion for Reconsideration filed on April 22nd, 2002, Mr. Davidson's Affidavit of Recusal against the Hon. McCurn, S.J. (contained in Exhibit-1), Petitioner's "motion for evidentiary hearing and supplemental motion of same," and the instant motion with supporting Affidavit, all in conjuction with the Second Circuit's two (2) issues on Remand; and

F.  Grant Petitioner, Pro-Se, the right to a "Certificate of Appealability (COA)" on his "motions for evidentiary hearing and supplemental motion of same" and further grant a COA on Petitioner's "affidavit/motion in support of the Hon. Neal P. McCurn, S.J.'s Recusal," etc..

**WHEREFORE,** based upon the aforementioned facts highlighted herein as a whole, Petitioner, Jaime A. Davidson, Pro-Se, humbly prays that for the best interest of justice and to enhance the public's confidence in the judicial system, this Honorable Court grants all the "Prayerful Relief Requested" and/or grants whatever other reliefs this Honorable Court deems just, proper and/or necessary as the law demands.

Signed on ____20____ Day of ____SEPTEMBER____, 2002.

                              Respectfully Submitted,

                              _Jaime A. Davidson_
                              Jaime A. Davidson, Pro-Se.
                              Reg. No. 37593-053  (B-4)
                              USP-Pollock
                              P.O. Box 2099
                              Pollock, La. 71467

-14-

# *CERTIFICATE OF SERVICE*

I, **JAIME A. DAVIDSON, PRO-SE.**          , hereby certify that I have served a true
and correct copy of the foregoing:  **"MOTION REQUESTING LEAVE TO RE-SUBMIT
PETITIONER'S "AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN,
S.J.'s RECUSAL," LEAVE TO STAY THE PROCEEDINGS TO HOLD AN "EVIDENTIARY
HEARING" UNTIL THE FINAL DISPOSTION ON THE MERITS OF THE PRESENT
RECUSAL MOTION/AFFIDAVIT, LEAVE TO FILE A TRAVERSE MOTION UPON THE
GOVERNMENT'S RESPONSE, AND LEAVE TO RECONSIDER PETITIONER'S MOTION
FOR EVIDENTIARY HEARING AND SUPPLEMENTAL MOTION OF SAME, TO PREVENT
ANY FURTHER MISCARRIAGE OF JUSTICE OF A PRISONER WHO IS ACTUALLY
(FACTUALLY) INNOCENT"**

Which is deemed filed at the time it was delivered to prison authorities for forwarding to
the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to
litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage
prepaid envelope addressed to:

**Mr. John G. Duncan, Esq.**
**Assistant U.S. Attorney**
**900 Federal Building**
**P.O. Box 7198**
**Syracuse, N.Y. 13261-7198**

**Honorable Chief Judge**
**ReL Judicial Conduct Complaint**
**Docket No. 02-8543**
**Second Circuit Court of Appeals**
**United States Courthouse**
**40 Foley Square-Room 1702**
**New York, N.Y. 10007**

and deposited same in the United States Postal Mail at the United States Penitentiary,
Pollock, Louisiana.
Signed on this    **2 0**    day of **September**   , 2002.

Respectfully Submitted,

*Jaime A. Davidson*
**Jaime A. Davidson, Pro-Se**

REG. NO. **#37593-053**
**USP-Pollock**
**PO BOX-2099**
**Pollock, LA 71467**

-15-

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAWRENCE K. BAERMAN
CLERK

100 S. CLINTON STREET
P.O. BOX 7367
SYRACUSE, NEW YORK 13261-7367
(315) 73 8500

May 20, 2002

Jaime Davidson, #37593-053, B-4
USP - Pollock
P.O. Box 2099
Pollock, LA 71467

Re:  Davidson vs. United States; 5:00-CV-869

Dear Mr. Davidson:

This is in response to your letter dated May 8, 2002.

This case was closed on December 27, 2001 by Judge McCurn's order which denied your motion for reconsideration and also denied your request for a certificate of appealability.

On January 29, 2002 you filed a motion for reconsideration of that order, and on February 4, 2002, you filed an appeal of that same order, along with an "Affidavit of Recusal of the Hon. Neal P. McCurn, S.J.".

Whenever an appeal is filed in a case involving an inmate, to include 2255 actions, the district court must send the pleadings, also called the record, to the court of appeals even if a motion is pending before the district court. The court of appeals will either stay the appeal pending a decision on the motion that's before the district court, or deny the appeal as premature.

As you know, on April 3, 2002 Judge McCurn denied your motion for reconsideration that you filed on January 29, 2002. The Second Circuit Court of Appeals has not yet ruled on the appeal you filed February 4, 2002. Your most recent motions filed on April 22, 2002 are still pending before Judge McCurn. They include your motion to respond to the "Affidavit of Recusal of the Hon. Neal P. McCurn, S.J.".

As for the cost of $6.00 for a copy of your docket sheet, this court has no money in your "account" to pay for copies. The most recent payment received in your name was on August 11, 2000. We received $40.00 from the U.S. Department of Justice Bureau of Prisons, which was applied to the $400.00 court assessment that was imposed at the time of your sentencing. You must still pay $6.00 for the docket sheet.

Very truly yours,

LAWRENCE K. BAERMAN

by: _Terry J. Mitchell_
Terry J. Mitchell
Deputy Clerk

cc: Elizabeth Riker, AUSA

EX. 1

N.D.N.Y.
00-cv-00869
McCurn, J.

# United States Court of Appeals
### FOR THE
## SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 12th day of June two thousand two,

Present:

> Hon. Roger J. Miner,
> Hon. José A. Cabranes,
> Hon. Rosemary S. Pooler,
> *Circuit Judges.*

In Re: Jaime A. Davidson,

                          Petitioner.                          01-3035

Petitioner has filed, *pro se*, motions for (1) reinstatement of his mandamus petition; (2) leave to attach withheld documentation from his institutional record; (3) a stay of his appeals pending the district court's decision on his second motion for reconsideration; (4) leave to submit his institutional grievances regarding prison personnel's violations of his constitutional rights; (5) recusal of Judge McCurn from presiding over his habeas motion; (6) an immediate transfer; (7) an order of protection; (8) a stay of his appeal and remand for an evidentiary hearing; and (9) leave to proceed with one copy of his motions and "exceedingly voluminous exhibits." Upon due consideration, it is ORDERED that the motion for reinstatement of the mandamus petition is denied. It is further ordered that all remaining motions are denied as moot.

> FOR THE COURT:
> Roseann B. MacKechnie, Clerk
>
> By: *Lucille Carr*

JUN 1 2 2002

*EX.2*

2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

JAIME A. DAVIDSON,     )
            Petitioner, )
                   )
                   )
     -Vs-           )      CRIM. NO. 92-CR-35(NPM)
                   )      CIVIL NO. 5:00-CV-869
                   )      APPEAL NO. 01-3035
UNITED STATES OF AMERICA, )
            Respondent. )
_____/

## AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN,S.J's RECUSAL

TO THE HONORABLE JUDGE OF SAID COURT;

MAY IT PLEASE THIS COURT:

       COMES NOW, Petitioner, Jaime A. Davidson, pro-se, presently being housed at USP - Pollock, 1000 Air Base Drive, Pollock, Louisiana 71467 and being over the age of 18 years, hereby certify that  the present affidavit is being presented to this Honorable Court with extreme due diligence and under good faith; and, after being duly sworn, affiant deposes and says:

       1.  That I, me, my, petitioner, Mr. Davidson and affiant is referred to herein as Jaime Alexander Davidson, Sr.;

       2.  That the present affidavit to recuse the Honorable Neal P. McCurn,S.J. from presiding over petitioner's Habeas Corpus proceedings is being submitted for a judicial review under the standards set forth by the Supreme Court in **Haines v. Kerner**, 92 S.Ct. 594(1972)(**per curiam**)(allegations of pro-se complaint are held to less stringent standards than formal pleadings drafted by lawyers);

*EX.3*

3.  Affiant submits the present affidavit again, in good faith, pursuant to Title 28 U.S.C. §§ 144 & 455; but, specifically, §144 which explicitly states as follows:

> "Whenever a party to any proceeding in a District Court <u>makes</u> and <u>files a timely</u> and <u>sufficient affidavit</u> that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

<u>Id</u>. at 28 U.S.C. §144.

4.  Affiant states that on November 28th, 2000, the Honorable Neal P. McCurn,S.J. denied my §2255 motion without considering the merits of various critical issues, by alleging that I was procedurally barred for failing to raise those claims on Direct Appeal, and denied all the additional motions I had submitted as <u>moot</u>.  <u>See,</u> (Petitioner's Motion for Reconsideration submitted on January 24th, 2002);

5.  On January 3rd, 2001, affiant had filed a Motion for Reconsideration alerting the Honorable McCurn, that he had just committed a clear error of fact/law by "<u>OVERLOOKING AND/OR MISAPPREHENDING</u>" my entire "Bar Complaint with Supporting Factual Exhibits" against all eleven (11) federal trial attorneys (mainly, Mr. John Ford Laidlaw, Esq. and Mr. Bruce Brian, Esq. (petitioner's two (2) trial counsels)), which also included a "<u>STATEMENT OF AFFIRMATION</u>" by my former appellate attorney, Mr. Louis M. Freeman, Esq.  Said documents overlooked were extremely critical to show/prove the "<u>CAUSE PRONG</u>" when an issue is procedurally barred, and in support of my claims of ineffective assistance of counsel which allowed the Honorable McCurn to consider all my claims on their merits. <u>See,</u> (Attached Exhibits for Support);

2.

6.  Affiant further states that, immediately upon the Honorable McCurn being in possession of my Motion for Reconsideration (on January 3rd, 2001), and reviewing the area highlighting the reasons for reconsideration (and acknowledging that his November 28th, 2000, denial order had failed to consider my entire Bar Complaint and most critically, Mr. Freeman's "Statement of Affirmation"); through his law clerk, the Honorable Neal P. McCurn, S.J. contacted Mr. Freeman from his Chambers, on or around January 10th, 2001, to "**INVESTIGATE**" and "**QUESTION**" Mr. Freeman to see if the signature found in the "Statement of Affirmation" inside my Bar Complaint was actually "<u>**FORGED BY AFFIANT**</u>." But, to the Honorable McCurn's surprise, Mr. Freeman conveyed to said law clerk that the signature found on that legal document (Statement of Affirmation), was indeed his own (Mr. Freeman, Esq.), and it was truly authentic;

7.  Affiant submits that it must be noted that, on page 14, of the Honorable McCurn's Memorandum-Decision and Order dated, November 28th, 2000, it explicitly reflects that said order was "<u>**FAXED**</u>" to Syracuse by whoever prepared said decision in the State of South Carolina.  The fax number shown on the top right hand corner reads as follows "843 651 0136." <u>See</u>, (Attached Last Page);

8.  Thus, as pointed out above in 6, during said inquiry/investigation in question, Mr. Freeman expressed to the Honorable McCurn's law clerk his deep rooted concerns for this particular case he worked on and asked the law clerk, "**what was the status of my §2255 Motion and/or how it looked?**" Said law clerk responded to Mr. Freeman's question/inquiry of concern "<u>**OFF THE RECORD**</u>" by stating, "**even with your 'Statement of Affirmation' the outcome of Mr. Davidson's Habeas proceedings would not be any different!;**"

3.

9.   After the Honorable McCurn's law clerk made that statement, Mr. Freeman out of more concern and not being completely satisfied with said response (witnessing their telephonic investigatory inquiry), immediately contacted the Law Offices of Mrs. Marie Y. Watson & Associates who in turn later informed Mr. Davidson to contact Mr. Freeman, to answer his question as to the Honorable McCurn's inquiry;

10.   Upon Mr. Davidson acquiring a legal call by his Counselor, Mrs. Shirley Gibson at FCI Edgefield on or about January 11th, 2001, to contact Mr. Freeman .... During said conversation, I explained to Mr. Freeman that the reason why the Honorable McCurn,S.J. was interested with the signature on his Statement of Affirmation, was based on the fact that I had just submitted/mailed off, a Motion for Reconsideration ..., pointing out the fact that the Honorable McCurn "overlooked and/or misapprehended" petitioner's entire "Bar Complaint" attached with his (Mr. Freeman's) statement of affirmation.  And, his (the Hon. McCurn's) November 28th, 2000, denial order was in total error, alleging that I had failed to raise those issues on Direct Appeal and because of that, I was procedurally barred.  Whereas, a careful review of said denial order will explicitly show and/or prove crystal clear, that said order "OMITTED" all mention of my entire Bar Complaint with supporting facts against all eleven (11) federal trial counsels, attached with the "Statement of Affirmation" that has created a major havoc to date (with Mr. Davidson's Habeas Corpus Proceedings);

11.   Affiant states that, Mr. Freeman was still a bit confused with my explanation stating, "you are wrong; I hear what you are saying, but the Judge's clerk told me after I inquired based on my

concerns of your case and what it meant to me, that 'even with my Statement of Affirmation, it would not change the outcome of your Habeas Proceedings';"

12. Affiant further states that, from past experiences being represented by Mr. Louis M. Freeman, Esq. during my Direct Appeal and him always being supportive, trust-worthy and upfront with me and my family, I then realized that Mr. Freeman did not want to tell me what was really happening and down/hurt my feelings, but he knew from the Honorable McCurn's law clerk response (off-the-record), that the Judge was not going to Vacate his November 28th, 2000, denial order, to execute a new and thorough Judicial Review in light of my Bar Complaint and his statement of affirmation, which he had previously failed to consider on its merits (and by law, he was suppose to consider);

13. Affiant states that based on the conversation I had with Mr. Freeman and seeing where he did not wish to hurt my feelings (by divulging the depths of his conversation with said law clerk), I began to get a strong gut feeling that the Honorable McCurn was violating his Codes of Judicial Conduct and/or Professional Responsibilities, by executing numerous illicit acts of foul plays outside of the record i.e., because to entertain my Bar Complaint, meant that he (the Hon. McCurn) would be compelled to reprimand/disbar my former trial counsel, Mr. John F. Laidlaw, Esq. (for using "RACIAL SLURS" against petitioner and the trial jurors, accepting money from my family "under the table" (off-the-record), to investigate my case and represent me properly and not doing it (after he was paid by the Government), and being appointed a private investigator to work on my case, but lied to me and declined to send him to visit me). Plus, in this high profile federal death

penalty eligible and major controversial case of extraordinary circumstances of first impression in the city of Syracuse, he (the Hon. McCurn), would have to find himself going against his own friends/associates out there in Syracuse.  Moreso, holding the Government (Mr. John G. Duncan, Esq. and Mr. Grant Jaquith, Esq.) guilty under prosecutorial misconduct/governmental outrageousness, disbarring all eleven (11) trial counsels (for being accessories after the fact/ineffective in their representations, just to cover-up the "<u>ASSASSINATION</u>" of Syracuse Police Officer, Wallie Howard, Jr.) and liably/criminally charging numerous law enforcement officers/agents from their knowing participation to "<u>ASSASSINATE</u>" Officer Howard, Jr. and/or cover-up said corruption, injuring the Honorable Court/entire Judicial System by committing a serious fraud upon the court, etc.;

14.  Affiant further states in support of the aforementioned facts, that it compelled me to execute an immediate legal investigation.  Upon concluding, I found out that the Hon. McCurn's investigatory tactics was judicially improper and considered a Judicial Misconduct/Usurpation of "<u>EX-PARTE CONTACT/COMMUNACATION</u>" that is disfavored from Justices/Judges and by the entire Judicial System and Congress.  Thus, on February 5th, 2001, I had filed a motion titled "Petitioner's Objections to this Court's No-Appearance Hearing and 'Unethical Violation of Judicial Ex-Parte Communication with Petitioner's Witness(es),' and Request for Writ of Habeas Corpus Ad Testificandum," which was denied as <u>moot</u>.  <u>See</u>, (Motion in Question, in my Docket Sheet Dated 2-05-01);

15.  On March 26th and 27th, 2001, after getting some bad gut feelings from the Honorable McCurn's unlawful "<u>Ex-Parte Contact</u>"



deceitfully trying to allegedly catch me committing a fraudulent act (when I have always been litigating my entire case <u>lawfully</u> and in <u>good faith</u>), and sensing that his opinion was soon about to be rendered, I had decided to contact both the Hon. McCurn and the former United States District Attorney in Syracuse, Mr. French via, legal telephone calls (as a <u>pro-se</u>, incarcerated litigant, acting as his own counsel of record and conducting my own investigation), to place them on notice that on December 5th, 2000, Mr. David A. Rigle,M.D. (Assistant Medical Examiner that had originally conducted Officer Howard, Jr's authopsy on Oct. 31st, 1990), had informed Ms. Angela E. Brown,M.Div. (and Youth Task Force, Co-Director) and Mr. Robert H. Goldberg,J.D.,M.D., that the Government had actually **"<u>LIED TO HIM</u>"** (Dr. Rigle, and he was willing to be deposed, but after witnessing the magnitud of the corruption, now he has declined seeking a court order to come forth). And, had he (Dr. Rigle) known that Officer Howard, Jr. was found dead in that sitting position, he would have testified that the deadly bullet had to come from the left side of the vehicle, **"<u>EXONERATING</u>"** Mr. Robert "Bam-Bam" Lawrence, Mr. Davidson and all defendants from said federal murder trial charges in question. **See, (Petitioner's Motion for Reconsideration dated January 24th, 2002, at Exhibits G - G.4; which pursuant to §144 shows that the present affidavit has been submitted in a "<u>TIMELY MANNER</u>"(WITHIN 10 DAYS), of onset of proceedings);**

16. On April 6th, 2001, the Honorable Neal P. McCurn,S.J. handed down his Memorandum-Decision and Order, denying my Motion for Reconsideration as a Rule 60(b) motion and alleging that it was a second or successive §2255 motion. Moreover, while I was

7.

*9*

expecting to receive a denial order, specifically based on the judge's law clerk statement to Mr. Freeman (that is **"IMPUTED"** to the Hon. McCurn); but, not knowing how he was going to execute said foul play in question after contacting Mr. Freeman and knowing that I was now aware and up on his ex-parte contacts, I was extremely caught by surprise witnessing said denial order in question and how it was actually rendered;

17.  Affiant states that while thoroughly reviewing the Hon. McCurn's April 6th, 2001 denial order, to my surprise again, the District Court's opinion omitted any/all mention of petitioner's Bar Complaint, Mr. Freeman's Statement of Affirmation and most critically, his (the Hon. McCurn's) **"Ex-Parte Communication"** through his law clerk, to Mr. Freeman (to authenticate his signature on said legal document);

18.  Additionally, petitioner further states that, the Honorable McCurn in attempting to silence me, placed an <u>unjustiable</u> **"<u>DOCUMENT REJECTION NOTICE-ORDER</u>"** against me, to the District Court clerk without Mr. Davidson ever violating any law(s) and/or filing any frivolous motions (and, most importantly, without giving any reasons for taking such drastic actions).  Petitioner was <u>only</u> informing the District Court that I was actually (factually) innocent and I needed an **"URGENT COURT ORDER"** to depose Dr. Rigle;

19.  However, the Honorable McCurn, S.J. not only executed that order against me, but upon requesting for a legal call on or around April 12th, 2001 and being denied by my C-3 Counselor, Mrs. Shirley Gibson which was extremely <u>unusual</u>, stating that, "from now on, all legal calls have to be approved by the Unit Manager, Mrs. LaSandra' Tucker."  I immediately knew that something wrong

*10*

was happening.  The next day during lunch (around 11:45 a.m.), after getting my legal call request approved by retired Assistant Warden, Richer; he called Mrs. Tucker next to me and told her to give me a legal call.  Mrs. Tucker immediately pulled AW Richer to the side and I then over heard her telling him in a low tone of voice about, "there is an order against Davidson and his legal calls."  AW Richer returned and said in a disgusted tone of voice and look on his face well upset (just after minutes being O.K., approving said legal call), that he ordered Mrs. Tucker to make sure that my legal call requests were all placed on legal call request forms and approved by her (only my Unit Manager).  And, after my couselor, Mrs. Gibson finally gave me that legal call to Mrs. Casilda Roper-Simpson, Esq., not vigilant enough and knowing the full scenario of the new strict order, she did express her fears by stating, **"I have to watch you very careful before you get me in trouble, you might try to call the Judge again!"**  To date, I do not have the faintest idea how did Mrs. Gibson know that I had recently called the Hon. McCurn's Chambers, if I had never told her/anyone and Mrs. Gibson did not inquire as to who at the court I wanted to call.  The record is yet to unfold as a whole;

20.  Affiant submits that since then to date, I have been retaliated on, placed under so much stress, transferred and all my litigation resources and research avenues have also been injured and/or damaged drastically etc.  I have been under-going so much pressure from the Hon. McCurn's order to the BOP (FCI Edgefield Executive Staffs), in cahoots with AUSA, John G. Duncan, Esq.  A total review of my Habeas Corpus proceedings, the Government's baseless/unfounded responses (without any affidavit and/or legal

9.

*11*

authority in support of same), and the Hon. McCurn's opinions, is showing/proving his biasness/prejudism against my person and where he cannot properly preside over my case being an impartial judge. I had even attempted to get AUSA, John G. Duncan, Esq. off my case, (knowing that he was the lead participant behind the fraud perpetrated upon the court and innocently incarcerating me to cover up Officer Howard Jr's "Assassination" by his own fellow officers), but the Hon. McCurn denied my request.  My Case Manager, Ms. Taylor (at FCI Edgefield), on Aug. 24th, 2001, with her own mouth around 5-10 minutes to 4:00 p.m., told me that, **"you know that we (C-3 Unit Team), cannot give you any legal calls; you are the only person in this whole prison (with approximately 1,500 prisoners), that 'must first' get an approval for a legal call through an Executive Order.  You know what you did to upset your prosecutor."**  See, (Petitioner's Second Circuit Court of Appeals, Motions Requesting a Court Order (Injunction), Due to Retaliatory Acts by BOP Executive Staffs....  Appeal No. 01-3035);

21.  Now, affiant submits that since the Second Circuit Vacated and Remanded Mr. Davidson's Motion for Reconsideration in light of Rodriguez v. Mitchell, 252 F.3d 190(2nd Cir. 2001), on August 30th, 2001, instead of the Hon. McCurn ordering the Government again (like in his order on February 22nd, 2001), to respond to the merits of said motion, the Hon. McCurn once more, ignored my newly discovered evidences in said motion (e.g., Mr. Robert "Bam-Bam" Lawrence Bar Complaint and Affidavit, proving all my claims of being actually (factually) innocent); and, once again, intentionally ignored and "overlooked" my Bar Complaint and Mr. Freeman's Statement of Affirmation, confirmed to be his own (and authentic), to his law

clerk, per his request to investigate.  And, the Honorable McCurn
still denied said motion in question without considering the merits
of most of Mr. Davidson's claims/issues that are being supported by
credible, factual affidavits with various critical points well
rooted outside my trial/habeas proceedings record;

22.    Therefore, affiant factually submits that with the
Honorable Neal P. McCurn,S.J. presiding over my Habeas Corpus
proceedings, I will not/cannot acquire a just/fair judicial review
on the meritorious/colorable (factual) issues in my Habeas Motion.
The Hon. McCurn has overwhelmingly shown/proven his "personal
biasness/prejudism" against me and his (the Hon. McCurn) favoritism
towards AUSA John G. Duncan, Esq. (the Government), who is the
adverse party in my case, and all eleven (11) trial counsels (who
he consistently declines to order them to respond to all the claims
in my Bar Complaint);

23.    Affiant states that a thorough review of the
Government's two (2) responses to Mr. Davidson's initial §2255
Motion and Motion for Reconsideration, versus the factual weight
of all the affidavits and newly discovered evidence(s) presented
by me (against the Government), will factually prove where/how the
Hon. McCurn,S.J. has a **"strong level of favoritism"** for the
Government (who is the adverse party).  I have even factually
proven where a fraud had been committed upon the court by
Mr. Warren Stewart Bennett; and, Mr. Duncan, Esq. neither the
Hon. McCurn has attempted to try and answer that issue;

24.    Petitioner further submits that based on the personal
bias feelings and partiality that the Hon. McCurn has shown against
me, he has been allowing Mr. Duncan (AUSA), to continuously do as

13

he pleases, by contacting the Bureau of Prisons (BOP), to place pressure against me, that has now evolved to a higher hights between the BOP and me; i.e., injuring my entire legal research and/or motion preparations;

25.   Mr. Davidson herein submits a quote from the affidavit of internationally renown Forensic Scientist, Mr. Herbert Leon MacDonell, that is worth re-stating (in support of my claims of being actually (factually) innocent and the fraud committed upon the court (today in my case), by one of Mr. MacDonell's former students (Mr. Warren Stewart Bennett), who is also responsible for my present incarceration (innocently, again, today), going on a decade February 9th, 2002), which states as follows:

> "I regret having to prepare an affidavit which is so critical of a former student.  Nevertheless I feel that when a person's life or liberty is at stake the loyalty to anyone is superseded by the necessity to present the truth.  I read in a Chinese fortune cookie a few years ago that, 'time is precious, but truth is more precious than time.'  This, undoubtedly, has special meaning for those who are serving time or those who are facing incarceration."

Id. at Page 5 (Mr. MacDonell's Affidavit in Petitioner's Motion For Reconsideration pending).

26.   Affiant submits that the Hon. McCurn in abusing all his judicial powers, he also has been wasting an overwhelming amount of Judicial Economy and/or Resources by attempting to circumvent all the appropriate judicial processes available to petitioner under the United States Constitution.  The Hon. McCurn has also been intentionally "FRUSTRATING ALL THE POLICIES AGAINST PIECEMEAL APPEALS" in my case, which at this time must be checked;

27.   Affiant states that the Honorable McCurn had two (2) chances (his April 6th, 2001 and December 27th, 2001, denial

12.

14

orders), to "<u>RIGHT THE WRONG</u>" and consider the factual meritorious issues of Mr. Davidson, "in light of my Bar Complaint and Mr. Freeman's Statement of Affirmation." But, to date, the record is crystal clear that the Hon. McCurn's personal biasness and partiality against me and deep-seated (rooted) favoritism for the Government, prohibits him from being fair and impartial as the law demands (executing his judicial duties in a just manner). In other words, the Hon. McCurn also desires to hinder my Due Process Rights by acquiring a fair/just **APPELLATE COURT REVIEW**" on the actual merits of my factual claims concerning his unlawful "Ex-Parte Contact/Communication" to Mr. Freeman (acknowledging that his law clerk's extrajudicial remarks are **"imputed to him,"** which have came to fruition);

28.   Affiant also states that the record is explicitly laid out to show/prove where the Hon. McCurn will "<u>never</u>" be impartial in the case at bar, especially surrounding upholding the law and executing his judicial duties and/or obligations <u>i.e.</u>, because he was caught in a Judicial Misconduct that the **"Records Silence"** of it, to date, only proves his intentional acts, to attempt and cover it up as though it had never occurred;

29.   Affiant submits that now, more than ever, it is extremely imperative for me to "call **both the Honorable Neal P. McCurn,S.J., his law clerk and AUSAs, Mr. John G. Duncan, Esq. and Mr. Grant Jaquith, Esq. on the stand as witnesses**" in a situation of "First Impression," to place on the record the reasons for them contacting **"MY WITNESS(ES)"** (Mr. Louis M. Freeman, Esq. and Mr. David A. Rigle,M.D. etc.), behind my back, and then drastically attempting to side step answering their reasons for said ex-parte

contact in question (and declining to admit to it on the record),
in order for me to acquire a full blown Due Process Rights Appellate
Court Review;

30.   Petitioner submits that, when affidavit is filed which
states facts showing personal bias and prejudice on part of judge,
it becomes his duty to retire from case.  **Antonello v. Wunsch**, 500
F.2d 1260(10th Cir. 1974);

31.   Petitioner further submits that, if reasons and facts
set forth in affidavit, charging personal bias and prejudice, gave
fair support to charge of a bent mind that might prevent or impede
impartiality of judgment, it would be duty of judge to allow
affidavit and certify case to executive committee for reassignment
to another judge.  **In Re Federal Facilities Realty Trust**, 140 F.Supp.
522(D.C.Ill. 1956);

32.   Moreover, affiant states that, a judge is required to
assume truth of facts stated in affidavit for disqualification and
to excuse himself when required by those facts; but he is also
obligated not to recuse himself when there is an insufficient basis
for so doing, the test being whether the facts alleged give fair
support to charge of bent mind that may prevent or impede
impartiality of judgment. **U.S. v. Tropiano**, 418 F.2d 1069(2nd Cir.
1969), cert. denied 90 S.Ct. 1258,1262,397 U.S. 1021,25 L.Ed.2d
530;

33.   In addition, Mr. Davidson states that in determining
whether affidavits are sufficient to establish that judge has
personal bias or prejudice against party or in favor of adverse
party, court must accept truth of facts alleged. **U.S. v. Burger**,
773 F.Supp. 289(D.Kan. 1991);

14.

*16*

34.   Affiant states that Black's Law Dictionary defines "ex-parte" as "on one side only; by or for one party; done for, in behalf of, or on the application of, one party only."  Id.;

35.   Petitioner asserts that, in general, the law frowns upon ex parte communications between judges and court appointed experts.  See, U.S. v. Craven, 239 F.3d 91(1st Cir. 2001); United States v. Green, 544 F.2d 138,146 n.16(3rd Cir. 1976)("Generally ... the court should avoid ex parte communications with anyone associated with the trial, even its own appointed expert."); See, Generally 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure §6305 (1997 & Supp. 2000)("[E]x Parte communications between the Judge and the expert ... are discouraged.").  The reason is obvious:

> "Most ex parte contacts between the trial judge and another participant in the proceedings risk harm, and ex parte communications with key witnesses (such as court-appointed experts) are no exception.  To the contrary, such ex parte contacts can create situations pregnant with problematic possibilities;"

36.   Further observing that the most appropriate way for a court to talk with its appointed expert would be through "an on-the-record conference in Chambers or an on-the-record conference call so that counsel for all parties may participate." Id.;

37.   Mr. Davidson asserts that, when a judge receives information that does not enter the record, the reliability of that information may not be tested through the adversary process (as in affiant's case).  See, Edgar v. K.L., 93 F.3d 256,259(7th Cir. 1996)(noting that "[o]ff-the-record briefings ... leave no trace in the record" and "[w]hat information passed to the judge, and

15.

how reliable it may have been (as in affiant's case), are now unknowable");

38.    However, petitioner further humbly requests that this Honorable Court exercises its "<u>Supervisory Powers</u>," to reassign the instant case to an impartial judge, to preside over the numerous issues of first impression within this Northern District of New York and of national importance throughout the United States, regarding the "<u>Fraud perpetrated upon the Court</u>." The Second Circuit in, <u>In Re International Business Machines Corp.</u>, 45 F.3d 641 (2nd Cir. 1995), held that, "a judge is required to recuse 'in any proceeding in which his impartiality might reasonably be questioned,' 28 U.S.C. §455 (a)(1988), and 'the test to be applied is an objective one which assumes that a reasonable person <u>knows and understands all the relevant facts</u>,' <u>In Re Drexel Burnham Lambert Inc.</u>, 816 F.2d 1307, 1313 (2nd Cir. 1988)(emphasis in original), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989);"

39.    The Second Circuit further found in, <u>In Re International Business Machines Corp</u>. (but these very expressions of a strict standard allow for the possibility that "in the rarest circumstances evidence" judicial rulings alone can warrant recusal, and can surely do so when accompanied by extrajudicial actions). <u>Id</u>. Furthermore, the Court pointed out that the ultimate inquiry is whether circumstances satisfy section 455(a), <u>i.e.</u>, create an objectively reasonable basis for questioning a judge's impartiality, by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Id</u>.

40.    Indeed, <u>Liteky v. United States</u>, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), note approvingly the court's earlier ruling in

16.



<u>Berger v. United States</u>, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65
L.Ed. 481 (1921), requiring recusal on the basis of judicial
remarks made in a prior proceeding.  <u>Id</u>. <u>See also</u>, <u>United States v.
Daley</u>, 564 F.2d 645, 651 (2nd Cir. 1977), cert. denied, 435 U.S.
933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); and

  41. Now, being redundant for the sake of clarity for the
record, Mr. Davidson has shown not only that said call being made
"<u>CONFIRMS</u>" where the District Court had acknowledged committing a
clear error of law, but "**suspiciously**" declining to place said
"ex-parte communications" of inquiry on the record (<u>See</u>, The Hon.
McCurn's April 6th, 2001 and December 27th, 2001, Memorandum-Decision
and Orders), only  tends  to raise numerous "<u>Red Flags of Illicit
Judicial Activities of Bad Faith</u>."  Review of the District Court's
November 28th, 2000, April 6th, 2001 and December 27th, 2001,
Memorandum-Decision and Orders, will explicitly prove all the above
mentioned facts conducted in a bad faith fashion, being omitted
from said orders in question.  Thus, the critical questions that
<u>must</u> be answered by this Honorable Court are:

  1. If the Honorable McCurn,S.J. did not commit a clear
error of law, then why did he execute an extrajudicial ex-parte
communication and "<u>did not</u>" place it on the record?  What was he
hiding and/or the Hon. McCurn "<u>never</u>" expected Mr. Davidson to ever
find out?

  2. Why place a Document Rejection Order against petitioner
unjustifiably for doing nothing wrong; especially, when affiant
had proffered documents to prove his innocence and a fraud that was
committed upon the court?

  3. Who was the Hon. Neal P. McCurn,S.J. representing,

the Judicial Branch and/or the Executive Branch of the Government, when he decided to "covertly" launch an investigation against Mr. Davidson, supposedly, acting in the capacity of a Judicial Officer?

   4.   Isn't the Federal Rules of Civil Procedures under 28 U.S.C. §2255, Rule 8 (Evidentiary Hearing), the appropriate forum for a Judicial Officer to utilize, if he/she wants to "AUTHENTICATE A DOCUMENT" proffered by a party in a Civil/Criminal Action pending?

   5.   Isn't it fair to say, that the Hon. McCurn has violated Mr. Davidson's Constitutional Rights to Due Process, by denying his Evidentiary Hearing warranted by law, by not placing all these inquiries on the record (in front of both interested parties), which is the proper legal forum for all inquiries i.e., instead of going behind affiant's back (off-the-record), without anyone's knowledge and/or consent, executing what is actually the Government's investigatory duties and/or deceptive tactics?

   6.   Can Mr. Davidson ever receive a fair Habeas Corpus review under the Constitution, when the record explicitly shows/ proves, how/where, all the bad faith acts of the Hon. McCurn being exercised to deny him the proper relief requested, acting as an "Accomplice to the Fraud Perpetrated Upon the Court," being imputed to him (as a judicial officer), through his tacit conspiratorial agreement with the Government?

   7.   What if Mr. Freeman did not contact petitioner being concerned, as to why the Hon. McCurn wanted to authenticate his signature? Would Mr. Davidson have known of his "JUDICIAL USURPATION(S);" instead of adjudicating claims in the courtroom,

18.

20

he is investigating petitioner's witnesses on the field (not to mention, **"KEY WITNESSES"**), being outside of his judicial duties?

Therefore, affiant **"CANNOT PHANTOM"** what type of just and/or impartial judicial officer would tarnish the appearance of the judicial system in said outrageous and/or deceitful manner. Nevertheless, petitioner "cannot" also rule out the fact that the Hon. McCurn's "Document Rejection Order" was triggered, based on said judge in question, contacting Mr. David A. Rigle,M.D. to also inquire "off-the-record," if "the Government did indeed lie to him committing a fraud on the court," and Dr. Rigle confirming said statement he had previously admitted to Mr. Robert H. Goldberg,J.D., M.D. and Ms. Angela E. Brown,M.Div. (Youth Task Force, Co-Director).

Petitioner further states that due to the Hon. McCurn's **"Judicial Misconduct and/or Judicial Usurpations"** raised herein as a whole, just to deprive and/or relinquish Mr. Davidson's Constitutional Rights to Due Process (to be granted his day in court -- and Evidentiary Hearing); this Honorable Court, in the best interest of justice (to safeguard the integrity of the judicial system and/or enhance the public's confidence of same), should therefore, grant my request to have the Hon. McCurn **"RECUSED"** from presiding over my entire Habeas Corpus proceedings. Especially, after all my factual claims and efforts made to recuse the Hon. McCurn, it will be undoubtedly clear that the Hon. McCurn will "never be impartial" towards affaint's case (claims).

### CONCLUSION

In **U.S. v. Craven**, at supra, Mr. Davidson has utilized said case regarding a sentencing judge and a court-appointed expert, to

19.

*21*

show how the facts of both cases equally applies to the instant matter at hand.  The <u>Craven</u> case deals with an 18 U.S.C. §3552(d) proceedings and affiant's case deals with a 28 U.S.C. §2255 Habeas Corpus proceedings (the trial/sentencing judge and petitioner's witness, who happens to be Mr. Davidson's former Appellate Counsel). The <u>Craven</u> court held the following:

> "If a sentencing court desires additional information from a court-appointed expert, it must either (1) make a written request for a supplemental report and provide that supplemental report to the parties in accordance with the procedure described in 18 U.S.C. §3552(d), or (2) bring the expert into court to be questioned in the presence of the parties.  Such an even-handed approach not only honors what we believe to be the intent of the drafters of section 3552, but also fits neatly with the prevailing view as to how courts should communicate with court-appointed experts on matters of substance."

<u>Id</u>.  at Page 102.

In the case at bar, affiant asserts that the Hon. McCurn has acted in a manner inconsistent with this prudential rule and therefore erred. On the "silent record" before this court, submitted by affiant, it cannot be held that said error in question should be deemed harmless.  The risk of taint surrounding this ex-parte contact runs too high.  The Hon. McCurn **<u>RELIED HEAVILY</u>** to procedurally bar a number of issues I had raised, by erring and alleging that petitioner failed to raise those claims on Direct Appeal and did not show **<u>CAUSE</u>** for failing to do so (especially, on my ineffective assistance of counsel claims), in order to entertain the merits of said claims.  Thus, that is why petitioner's Bar Complaint, Mr. Freeman's Statement of Affirmation and said off-the-record inquiry, becomes so crucial to the alleged legitimacy of said final judgments in question rendered by the Hon. McCurn.

20.

Mr. Davidson states that there is no contemporaneous record of the ex-parte communication— only affiant's contentions and what Mr. Freeman conveyed to me, and what I have personal knowledge of—— thereby complicating the harmless-error review and/or the Appellate Court review. Affiant further states that in this case, there are too many deceitful actions by the Hon. McCurn still in question, that places me in a position where I **must** doubt the Hon. McCurn's alleged good intentions—— having so many different opportunities to correct the record and his error and declining to do so... he has gone too far now. The most mysterious question remains open and is, **"why is the 'truth' continuously being shoved to the side and/or suppresed from coming to the light?"**

Further, affiant has clearly proven where ex-parte contacts and/or communications creates serious problematic situations as the present one in question. And, that lends me now to state then, **"why and/or what was the Hon. McCurn's real intentions (good/bad), behind said off-the-record contact to one of my 'key witnesses,' if he knew that he was not going to consider it with the merits of my claims?"** The Hon. McCurn **must** be placed on the **"WITNESS STAND WITH HIS LAW CLERK,"** to inquire into what prompted that telephone inquiry and why such pre-mature ruling was alleged by his law clerk. Plus, to answer, why his November 28th, 2000, denial order that has sparked this major contraversy to date, was **"FAXED"** from an unknown residence out in South Carolina to the city of Syracuse, New York (to his Chambers), on November 20th, 2000. <u>See</u>, (Attached Exhibit in Question).

WHEREFORE, I swear under the penalty of perjury, pursuant to **"Title 28 U.S.C. §1746,"** that all the aforementioned facts highlighted herein as a whole, are true and correct to the best of

23

my personal knowledge and/or clear recollection.  I also hereby confirm that I am willing and able to testify to the above mentioned facts detailed in its entirety, in any District Court in the United States of America.

Signed on this 24 day of JANUARY , 2002.

Respectfully submitted,

Jaime A. Davidson/Affiant

**NOTARY PUBLIC / COMMISSIONER OF DEEDS.**

Signature of Notary

DATE: 1|25|2002

My Commission Expires at death .

COPY

22.

24

CERTIFICATE OF GOOD FAITH

I, Jaime Alexander Davidson, Sr., affiant/petitioner, pro-se, the undersigned, hereby certify and affirm that the present "Affidavit in Support of the Honorable Neal P. McCurn, S.J's Recusal," is being submitted for a thorough Judicial Review in the best interest of justice, pursuant to Title 28 U.S.C. §144 and in the alternative, §455(a). See, Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474(1994)(The Supreme Court left the door open for disqualification on such grounds in "the rarest circumstances," where a ruling shows a deep-seated favoritism or antagonism that makes fair judgment impossible (as in affiants case), or where a ruling shows that it derives from an extra-judicial source). See, (Attached Court Ruling at Page 14).

Affiant attests and hereby certifies to the fact that the instant affidavit has been properly prepared with extreme "due diligence" in a "timely manner" and under "GOOD-FAITH;" and, Mr. Davidson/petitioner, pro-se, attests to the fact that affiant will/is not attempting to "recklessly abuse the statute's powerful automatic procedures." Affiant further swears under the penalty of perjury (PURSUANT TO TITLE 28 U.S.C. §1746), that the aforementioned facts set forth herein as a whole, are "all true and correct" to the best of affiant's own personal knowledge and/or clear recollection. Again, affiant hereby certifies that the facts detailed herein are all "TRUE" and are being proffered in "GOOD-FAITH," pursuant to the requirements set forth in §144 at supra.

Signed on this 24 day of JANUARY , 2002.

NOTARY PUBLIC/COMMISSIONER OF DEEDS

_Staci S. Ballinger_
Signature of Notary

Date: 1.24 2002

My Commission expires at death.

Respectfully submitted,

_Jaime A. Davidson_
Jaime A. Davidson/Affiant

23.

25

# CERTIFICATE OF SERVICE

I, Jaime A. Davidson, pro-se, hereby certify that I have served a true and correct copy of the following:

### AFFIDAVIT IN SUPPORT OF THE HONORABLE
### NEAL P. McCURN, S.J's RECUSAL

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, *Houston v. Lack* 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

Mr. John G. Duncan, Esq.
Assistant U.S. Attorney
900 Federal Building
P.O. Box - 7198
100 South Clinton Street
Syracuse, New York 13261-7198

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
Attn: Mr. Benjamin Moss
Deputy Clerk
Appeal No. 01-3035
United States Courthouse
40 Foley Square
New York, New York 10007

and deposited same in the United States Postal Mail at the United States Penitentiary, Pollock Louisiana, on this: _24_ day of: _January_ , 2002.

Jaime A. Davidson, pro-se.
Reg. No. 37593-053 (B-4)
(USP) POLLOCK
P.O. Box 2099
POLLOCK, LA 71467

26

27

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
LAWRENCE K. BAERMAN, CLERK

NOV 2 8 2000

FILED

SYRACUSE, NY

JAMIE A. DAVIDSON,

                                    Petitioner

            vs.                                      00-CV-00869

UNITED STATES OF AMERICA

APPEARANCES:                            OF COUNSEL:

JAMIE A. DAVIDSON
Petitioner
Reg. No. 37593-053 (C-3/310)
FCI Edgefield
Post Office Box 724
Edgefield, SC 29824

HON. DANIEL FRENCH                      JOHN DUNCAN
United States Attorney                  Assistant U.S. Attorney
P. O. Box 7198
Syracuse, NY 13261-7198

            MEMORANDUM-DECISION AND ORDER

McCURN, Senior Judge:

        Acting pro se, Jamie Davidson moves pursuant to 28 U.S.C.

§ 2255 to vacate, set aside or correct a sentence imposed by

this court.  His § 2255 motion is accompanied by numerous

related motions seeking various relief.  Although Davidson's §

2255 motion is untimely, the court equitably tolls the

applicable statute of limitations for the unique reasons set

forth below.  Because Davidson fails to present any colorable

claim on his § 2255 motion, the court denies that motion on the

                              -1-

"ATTACHMENTS"

27

therefrom.  Thus, the court is barred from considering these

claims on this § 2255 motion.  See United States v. Frady, 456

U.S. at 167-68, 102 S. Ct. 1584 (1982).

CONCLUSION

Davidson's motion to file an amended § 2255 motion (Docket

No. 11), and motion requesting leave to submit a delayed exhibit

(Docket No. 25), are GRANTED to the extent that the court

considered the material accompanying those motions.  Because

Davidson fails to raise any meritorious argument on his § 2255

motion (Docket No. 1), that motion, as amended, is DENIED.

Davidson's motion for an evidentiary hearing (Docket No. 1),

motion to proceed with additional pages (Docket No. 2), motion

and supplemental motion for appointment of counsel (Docket Nos.

4 & 9), motion to file a traverse motion (Docket No. 11), motion

for discovery and expansion of the record (Docket No. 20), and

motion for extension of time (Docket No. 26) are DENIED as moot.

IT IS SO ORDERED.

DATED: November 20 , 2000
       Syracuse, NY

Neal P. McCurn
Senior U.S. District Judge

-14-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
P.O BOX 7365
100 SOUTH CLINTON STREET
SYRACUSE, NEW YORK 13261-7365

TEL. 315-234-8590

CHAMBERS OF
.'AL P. McCURN
.ENIOR JUDGE

June 27, 2000

John Duncan, Assistant U.S. Attorney
900 Federal Building
P. O. Box 7198
Syracuse, NY 13261-7198

> Re: Davidson v. United States 00-V-669

Dear Mr. Duncan:

Enclosed find copy of plaintiff's 28 USC § 2255 motion to vacate, set aside, or correct sentence (Docket No. 1) together with copies of exhibits (Docket No. 6), which have been filed with the court.

We are also forwarding for your information copies of various other motions filed by plaintiff at the time of his 2255 filing. In addition to filing his petition for habeas corpus the plaintiff filed the following with the court: motion for evidentiary hearing; motion requesting leave to proceed with additional pages; motion for appointment of counsel and memorandum in support of same; complaint of misconduct against trial attorneys John Ford and Bruce Brian with supporting papers; and supplemental motion for appointment of counsel.

We would appreciate having your response to the habeas corpus petition on or before August 1, 2000. As to the other motions, the court would welcome a letter from you with any pertinent observations you wish to make in connection with same.

Very truly yours,

Neal P. McCurn
Senior U.S. District Judge

NPMcC:jw
Encs.

cc: Jaime A. Davidson
FCI Edgefield
P. O. Box 724
Edgefield, SC 29824

29

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAIME A. DAVIDSON, )<br><br>          Complainant,  )<br><br>          v.  )<br><br>JOHN FORD LAIDLAW and  )<br>BRUCE BRAIN, et. al.,  )<br><br>          Complainee.  ) | Crim. No. 92-CR-35 |

_____/

COMPLAINT OF MISCONDUCT
AGAINST BOTH TRIAL ATTORNEYS
(JOHN FORD LAIDLAW AND BRUCE BRIAN)
WITH SUPPORTING FACTS

Prepared and Done By:

_Jaime A. Davidson, Jr._
Jaime A. Davidson, Sr.
Reg. No. 37593-053(C-3/310)
FCI Edgefield
P.O. Box - 724
Edgefield, South Carolina 29824

(B.2)

ON CRIMINAL AND ETHICAL MISCONDUCT

Jaime A. Davidson, Sr.
Reg. No. 37593-053(C-3/310)
FCI Edgefield
P.O. Box 724
Edgefield, South Carolina 29824


Lead - Trial Attorney:    Mr. John Ford Laidlaw
                          Attorney at Law
                          103 East Water Street
                          Syracuse, New York 13202
                          Tel. No. (315) 474-1118
                          Fax. No. (315) 474-8867

          Co-Counsel:     Bruce Brian
                          Attorney at Law
                          333 East Onondaga Street
                          Syracuse, New York 13202

Present Attorney of Record:  Mrs. Marie Y. Watson
                          Attorney at Law
                          41 Marietta Street, N.W.
                          Atlanta, Georgia 30303
                          Tel. No. (404) 522-4101
                          Fax. No. (404) 522-4103


### COMPLAINT OF MISCONDUCT
### AGAINST BOTH TRIAL ATTORNEYS WITH SUPPORTING FACTS


I, Jaime Alexander Davidson, Sr., (Reg. No. 37593-053), hereby certify that this complaint is presently being brought to this New York State Bar Association and Grievance Office under good faith and after being duly sworn, deposes and says:

1. That I, me, my and complainant, is referred to herein as Jaime Alexander Davidson, Sr.;

2. That I am the complainant in the criminal case of <u>United States v. Jaime A. Davidson</u>, Criminal No. 92-CR-35 and <u>U.S. v. Thomas</u>, 34 F.3d 44 (2nd Cir. 1994);

16

## AFFIRMATION

## IN THE MATTER OF JAIME DAVIDSON

LOUIS M. FREEMAN, an attorney duly admitted to practice law in the Courts of the State of New York and for the Southern and Eastern Districts of New York, affirms to the truth of the following under the penalties of perjury:

1. That I was originally contacted by Isaac Davidson, to appeal the conviction of his brother, Jaime A. Davidson.

2. That Mrs. Shirley Davidson retained me to appeal her son's case.

3. That upon being retained, I contacted the office of John F. Laidlaw, Esq., in Syracuse, New York, and introduced myself as Mr. Davidson's appellate counsel.

4. That I requested all of Mr. Davidson's trial preparation materials (Discovery Materials) from Mr. Laidlaw, in order to review them thoroughly and begin my own independent investigation.

5. That after a number of requests, I conveyed to Mr. Laidlaw the importance of acquiring these documents for Mr. Davidson's appeal preparation, but I never received them.

6. That I explained to Mr. Davidson that Mr. Laidlaw had not sent me the discovery materials, and requested Mr. Davidson contact Mr. Laidlaw directly because time was running out and I had to prepare his appeal.

7. That Mr. Davidson was pushing me to get the material, but I explained to him that even if I got the material, if his trial counsel failed to preserve certain objections for appeal, then

EX-E

32

he couldn't raise them. (For example, the severance issue and antagonistic defenses issue and the issue involving Robert Lawrence taking the stand and testifying as to self defense, which contradicted Mr. Davidson's alibi defense.)

8. That once I began to prepare Mr. Davidson's appeal, all the other appellate lawyers began calling me from Syracuse, New York, and wanted me to take the lead on the appeal.

9. That despite my serving as point person, Mr. Laidlaw still refused to comply with my request that he turn over all discovery materials.

10. That I explained this to Mr. Davidson.

11. That I also explained to Mr. Davidson how after going through his federal trial transcript it appeared that Mr. Laidlaw went to trial without conducting any pretrial investigations or hiring his own expert witnesses (for example, to re-examine Investigator Howard's cause of death.)

12. That when Mr. Davidson's appeal was affirmed, I was the first person to tell him about that decision. When I told him he sounded very sad, and he also sought my assistance to file his writ of certiorari.

13. That Mr. Davidson kept calling me and asking me to please file his writ to the Supreme Court, because I knew his case well and I had already written the appeal to the Second Circuit.

14. That one of reasons I agreed to file Mr. Davidson's petition for certiorari, was that I thought Mr. Laidlaw handled the Davidson trial poorly and left no room to raise issues which could have been meritorious. Also, because §848(e)(1)(B) convictions are rare (the only one in

the Second Circuit that I could find,) I had to research the Congressional intent.

15.  That Mr. Davidson kept telling me that something was wrong with the government testimony that said Investigator Howard was killed.  Davidson told me he did not believe Robert Lawrence actually committed the murder.

16.  That had Mr. Laidlaw turned over Mr. Davidson's discovery materials including Investigator Howard's medical files as I had requested, I would have hired my own forensic pathologist to conduct an independent investigation.  Then, I might have been able to discover from the autopsy findings that Investigator Howard was "not" shot from close range.

17.  That this was a death penalty eligible case and a high profile case involving the death of a police investigator.  Therefore, I gave this case extreme priority, because the appeal had to be filed timely.  However, because trial counsel withheld documentation which might have demonstrated that Investigator Howard, was shot from long range, I was limited as to what I could do.

18.  That I retained the services of a private investigator, Mr. Irwin Blye, from Queens, New York but, Mr. Blye's services had to be terminated for lack of finances.

19.  That the record will reflect all my earnest attempts to appeal Mr. Davidson's conviction and to vindicate Mr. Davidson from those charges, if possible.

20.  That I can confirm that Mr. Davidson has always been raising the issue that Investigator Howard could not have been shot from so close of a range, with a bullet wound the size of a quarter, being shot with a .357 revolver and the bullet staying in his head.



21. That I wanted to pursue the alleged deputization of Investigator Howard, but Mr. Laidlaw hampered me with his failure to provide discovery and Mr. Davidson's family was having financial difficulty. A decision by the family had to be made as to how to spend the money, on the appeal or on the investigator.

22. That Mr. Davidson kept calling Mr. Blye to have the investigation started, but Mr. Blye did not want to get started until he was sure he would be paid. The situation was frustrating and unfortunate because Mr. Davidson kept talking about issues he wanted to raise.

23. That had Mr. Laidlaw turned over Investigator Howard's medical files and we had seen that the autopsy findings stated: "No evidence of close range firing on skin surrounding gun shot wound of entrance," my firm would have likely moved to have this investigation financed, by outside or third parties, if possible.

24. That is was extremely frustrating and disheartening to myself and my firm that we had to give up the idea of conducting a separate independent investigation of our own. I expressed this to Mr. Davidson at the time. This is especially true now that we see there was something lurking out there that we were unable to uncover.

LOUIS M. FREEMAN

20

Affidavit of Mr. Louis M. Freeman, Esq.

Personally appeared before me, the undersigned notary duly authorized by law to administer oath, LOUIS M. FREEMAN, ESQ.,being duly sworn, and states that he has personal knowledge of the following facts and they are true and correct.

1.  That my name is LOUIS M. FREEMAN, ESQ. I am over the age of 18 years old and under no disability that would make me incompetent to testify.

2.  That I, Louis M. Freeman, Esq., was appellant, Jaime A. Davidson's former appellate attorney;

3.  That I am attorney-at-law located at 30 Vesey Street, Suite-100, New York, NY 10007;

4.  That on or around January 10th, 2001 my office was contacted by the Chambers of the Honorale Neal P.McCurn, Senior Judge through his law clerk, inquiring if my signature found on my Statement of Affirmation contained in Mr. Davidson's Habeas Corpus Pleadings was authentic;

5.  That I expressed to the honorable Judge McCurn's law clerk that my signature on that (my) Statement of Affirmation was indeed authentic;

Sworn to and subscribed this **26** day of **June** 2001

_____
Louis M. Freeman

_____
Notary Public
Commission Expires:

MICHAEL LEWIS ALPERSTEIN
Notary Public, State of New York
No. 01AL0052360
Qualified in Kings County
Commission Expires April 30, **2003**

36

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMIE A. DAVIDSON,

                        Petitioner,

            v.                          00-CV-00869
                                        92-CR-35
UNITED STATES OF AMERICA,               Appeal No. 01-2370

                        Respondent.

_____

APPEARANCES:                            OF COUNSEL:

JAMIE A. DAVIDSON
Petitioner, Pro Se
Reg. No. 37593-053
USP-Pollock
Post Office Box 2099
Pollock, LA 71467

HON. JOSEPH PAVONE                      JOHN DUNCAN
United States Attorney                  Assistant U.S. Attorney
Northern District of New York
P. O. Box 7198
Syracuse, NY 13261-7198
Attorney for Respondent


                        **ORDER**

McCURN, Senior Judge:

        The court has before it for consideration Petitioner's

motion for an evidentiary hearing filed July 11, 2002 (Dkt. #

80) and Petitioner's supplemental motion for an evidentiary

hearing filed August 20, 2002 (Dkt. # 83).  These motions are

filed in connection with Petitioner's April 22, 2002 motion for

                        -1-

EX. 4
37

reconsideration (Dkt. # 74) of the court's Order of November 28, 2000 (Dkt. # 27) denying Petitioner's section 2255 motion to vacate his sentence of imprisonment and in connection with the mandate of the Second Circuit Court of Appeals dated June 12, 2002 remanding to this court for consideration of the Petitioner's claims of ineffective assistance of appellate and trial counsel (Dkt. # 78).

The matters as to which Petitioner seeks an evidentiary hearing, as recited in his moving papers and attached exhibits in support of said motions, are extraneous to the discrete issues presented to this court in the mandate of the Court of Appeals. Accordingly, after due consideration, the Petitioner's motions for an evidentiary hearing are hereby **DENIED**.

IT IS SO ORDERED.


DATED: September 4, 2002
       Syracuse, NY

_____
     Neal P. McCurn
Senior U.S. District Judge


-2-

38

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
United States Courthouse
40 Foley Square - Room 1702
New York, N.Y. 10007

**Roseann B. MacKechnie**
**Clerk**                                          August 21, 2002

Mr. Jaime A. Davidson
37593-053 - B4
USP Pollock
POB 2099
Pollock, Louisiana 71467

RE: Judicial Conduct Complaint
**Docket No. 02-8543**

Dear Mr. Davidson:

We hereby acknowledge receipt of your complaint, dated July 29, 2002, received in this office on August 19, 2002.

The complaint has been filed under the above-captioned number and will be processed pursuant to the Rules of the Judicial Council of the Second Circuit Governing Complaints Against Judicial Officers Under 28 USC § 372 (c).

Sincerely,

Roseann B. MacKechnie,
Clerk
By:

Bernard F. Madsen Jr.
Deputy Clerk

EX. 5
39