Stricken
2/19/03



EXHIBIT-B

5:00cv869

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

JAIME A. DAVIDSON,      )
      Petitioner,    )
                    )
                    )    **CIVIL NO. 5:00-CV-869 (NPM)**
    -vs-            )    **CRIM. NO. 92-CR-35**
                    )    **APPEAL NO. 01-2370**
                    )
UNITED STATES OF AMERICA    )
      Respondent.    )
_____/

**AFFIDAVIT OF JAIME A. DAVIDSON IN SUPPORT OF MOTION REQUESTING LEAVE TO RE-SUBMIT PETITIONER'S "AFFIDAVIT IN SUPPORT OF THE HONORABLE NEAL P. McCURN, S.J.'s RECUSAL..., TO PREVENT ANY FURTHER MISCARRIAGE OF JUSTICE OF A PRISONER WHO IS ACTUALLY (FACTUALLY) INNOCENT**

TO THE HONORABLE JUDGE OF SAID COURT;

MAY IT PLEASE THIS COURT:

Comes Now, Affiant/Petitioner, Jaime A. Davidson, Pro-Se, (Reg. No. 37593-053), presently housed at USP-Pollock (P.O. Box 2099, Pollock, Louisiana 71467), hereby certifying that this "affidavit in support of the instant motion requesting leave to 're-submit' Petitioner's affidavit of recusal...," Is presently being brought to this Honorable Court with extreme due diligence and under good-faith, and after being duly sworn, Affiant deposes and says:

1. That I, me, my, Affiant and/or Petitioner, is referred to herein as Jaime A. Davidson;

2. That I have personal knowledge of the facts set forth in this "affidavit of Jaime A. Davidson in support...;"

3. That this is a unique "prima facie" affidavit that raises a number of critical issues of exceptional circumstances and of

*EX. B*

"first 'national' impression;"

　　　4. That based on this Court's August 28th, 2002, "Show Cause Order" to the government, in conjunction with this Court's September 6th, 2002, denial Order to my "motion for evidentiary hearing and supplemental motion of same," without citing any findings of facts and/or legal authorities in support of his Order, only begins to lend further weight as to critical questions of constitutional magnitude of incompetence, personal biasness and prejudice against me, favoritism towards the government and not being able to be an impartial judicial officer presiding on my habeas proceedings, which warrants even more reasons for the recusal of the Hon. Neal P. McCurn, S.J. for judicial misconduct and/or judicial impediments (striving to continue suppressing/covering-up the fraud committed upon the Court); and, volunteering his status by becoming an accomplice to said fraud on the Court;

　　　5. Affiant submits that, the Supreme Court has particularly stressed the need to use supervisory powers to prevent the Federal Courts from becoming accomplices to such misconducts as stated at **Supra**. **See**, **e.g.**, **McNabb v. United States**, 318 U.S. at 345, 63 S. Ct. at 615 ("plainly, a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the Courts themselves accomplices in willful disobedience of law"); **Mesarosh v. United States,** 352 U.S. at 14, 77 S. Ct. at 8 (the Court should use its supervisory powers in federal criminal cases "to see that the waters of justice are not polluted"); **Elkins v. United States,** 364 U.S. at 223, 80 S. Ct. at 1447 (Federal Courts should not be "accomplices in the willful disobedience of a constitution they

are sworn to uphold").  Petitioner asserts with all due respect
that, the District Court via, the Hon. McCurn, S.J. has voluntarily
entered these "polluted waters" in hope to save the government by
showing too much favoritism, clearly becoming an accomplice in the
willful disobedience of a constitution it was sworn to uphold
(giving the entire judicial system a "black eye" and compelling the
public to lose all confidence in the system which was set up to
protect them);

  6. Affiant asserts that Mr. John Ford Laidlaw, Esq's "racist
behavior/attitude" against me (derrogatively addressing my family
as "you people"), is crystal clear for the record sakes why Mr.
Laidlaw declined in effectively representing me, withholding my
discovery materials from Mr. Freeman, Esq., conducting the pre-trial
investigation he promised my father that he was going to do and
raise/object to a number of issues that would have been useful for
for my appeal.  But, because Mr. Laidlaw refused to raise those
issues, Mr. Louis M. Freeman, Esq. was unable by law/procedures to
raise them on my direct appeal, like for example:

  1. I had told Mr. Laidlaw to renew my severance motion when
I heard that my co-defendant, Mr. Robert Lawrence was going to
testify on self-defense, while I was raising my alibi defense and
Mr. Laidlaw refused to renew my severance motion request; 2. I had
told Mr. Laidlaw, Esq. to object to the Judge's Pinkerton Doctrine
(blanket self-defense jury instruction), but he refused to listen
to me and follow my instructions; 3. I had instructed Mr. Laidlaw
to file a motion to seek the change of venue for my case to another
location due to the high level of pre-trial media publicity that
was going to be highly prejudicial for me in acquiring a fair trial

(where <u>no</u> police officer had not been killed in the City of Syracuse in the line of duty since 1929 (approximately 60 years)), but he declined to follow my requests stating that I needed to stop listening to all those jailhouse lawyers, because they didn't know nothing and he knew how to do his job; and **4.** I became very frustrated and angry with Mr. Laidlaw for steady lying to me on the regular, that he was going to mail Mr. Freeman my entire file (including all my "<u>discovery material</u>" and all my co-defendants state trial transcipts), and everytime I called Mr. Freeman, he would also be angry stating that he is tired of asking Mr. Laidlaw to mail him my entire file (and discovery materials), in order for him to conduct his appellate factual/legal investigation, but it was all to no avail;

7. Moreover, the record is clear that, when Mr. Laidlaw stated to me on a number of occasions that, "<u>you people</u> must really think that I was going to put my career on the line for that small amount of money the Court is paying me, while the government is spending '<u>over a million dollars</u>' to bring '<u>you people</u>' to trial;" (Mr. Laidlaw was clearly referring/meaning to say "<u>you n---rs</u>," talking about my family and co-defendants). Mr. Laidlaw's "<u>racist actions</u>" not wanting to place his career on the line to help a "<u>n----r</u>" is axiomatic; so basically, that is why Mr. Laidlaw refused to adhere to my requests/orders and continuously declined to turn over all my records (including discovery materials), to Mr. Freeman, Esq., because he refused to go against his own collegues/associates for a "<u>n----r;</u>"

8. In addition, Mr. Laidlaw knowing that he was not going to place his career on the line for no "n----r," he still decided to "<u>solicit and rob</u>" my parents money under the false pretenses that

he was going to do everything in his power to prove my innocence and which he didn't do.  Affiant states that the "N-word" might sound too harsh, but it is the reality of Mr. Laidlaw's racist beliefs and actions that led him to hinder my direct appeal;

9. Thus, Mr. Laidlaw being such a racist person, allowed his racist acts to maliciously impede on Mr. Freeman's appellate investigation, because as he explicitly detailed on his April 4th, 2000 bar complaint response that, "by way of personal background I think it would be helpful for you to know a little about my professional background.... In the past 13½ years I have established a general practice with an emphasis on criminal defense work.  In this area I have had extensive trial experience in both the State and Federal Courts....  I would estimate that since I have been out in private practice I have represented several thousand clients, mostly in the criminal law area."  Affiant asserts that from Mr. Laidlaw's own mouth, he knows better and/or should have known better, to preserve my requested issues for appeal and turn over all my documents to my Appellate Counsel.  But, Mr. Laidlaw has yet to respond to a number of my critical questions;

10. Petitioner further asserts that Mr. Laidlaw has proffered in his bar complaint response, a blatant and bold faced lie, alleging having no knowledge that "you people" was/is a racial slur (because he was caught red handed on the record, so he had no other choice, but, to concede to making said racist comment), and Mr. Laidlaw's poor excuse goes as follows:

> "Mr. Davidson alleges that in some fashion I used politically
> incorrect language during the trial by repeatedly using
> the expression 'you people'.  In support of this he refers
> to a portion of the transcripts of my opening statement to
> the jury in which that phrase was used.  "I have never
> heard anyone until now, assert the phrase 'you people' is

a racial epithet.'  My use of it in addressing the jury
was merely to refer to them as a group and was spoken with
no sinister or racist intent...."

Id. at page 2 (Mr. Laidlaw's response to my bar complaint dated April
4th, 2000);

11. Mr. Davdidson asserts that any professional individual
(especially attorneys) in Corporate America, "must" know how to address
other individuals in a professional and non-offensive manner.  Mr.
Laidlaw had to have heard how in the early 1990's while Mr. Ross Perot
was running for President and made a comment saying "you people", he
was reprimanded immediately and Mr. Perot was compelled to make a
"national apology" for making such racist statement; so, now, Mr.
Laidlaw wants Affiant and the Court to believe that he had no knowledge
that "you people" is a racial epithet;

12. Now, for the Hon. McCurn, S.J. not to have delved behind
the scenes, Ordered Mr. Laidlaw, Esq. to respond to the three (3)
critical points mentioned above i.e., the racial slurs, the solicitation
and robbery of my parents money, while still collecting funds from
the Criminal Justice Act (CJA), and withholding my discovery documents
from my Appellate Attorney, only lends even stronger support that
the Hon. McCurn is even a "bigger racist person" than Mr. Laidlaw
(that is why the Hon. McCurn, S.J. has moved so fast to deny my motions
for evidentiary hearings, to further suppress the above mentioned
illicit criminal activities, racist expressions and fraud committed
upon the Court etc.).  The Hon. McCurn is only displaying how serious
his personal bias and prejudice is against me, where his conduct
proves that he can never be impartial with Affiant;

13. Mr. Davidson asserts that, on or around January 10th, 2001,
when the Hon. McCurn made an Ex-Parte Communication"  to Mr. Freeman,

it was alleged that said Ex-Parte contact was done to authenticate Mr. Freeman's "Statement of Affirmation" and see if it was indeed his own.  But, the record is extremely clear now, that said Ex-Parte contact was executed in a subtle manner, to attempt to intimidate my "key witness", Mr. Louis M. Freeman, Esq. and say in so many words to his law clerk (contact Mr. Freeman because I (the Hon. McCurn) cannot believe he gave that "n----r" that affidavit).  Even if the Hon. McCurn at this late date attempts to deny the fact of his racist expression, the record speaks for itself.  Affiant has further shown how "relevant" these issues above are, to the Second Circuit's Order on remand, dated September 12, 2002;

14. Mr. Davidson, in support of the Hon. McCurn's cover-up for Mr. Laidlaw regarding his racist statement of "you people", I am citing **Anderson v. Memphis City Schools Bd. of Educ.**, 75 F. Supp. 2d. **786 at 788 (W.D. Tenn 1999)**, where the Court explained that, "she begins her list of grievances with a 1981 event in which Hebert allegedly referred to the children of a fellow employee by a racial slur after he treated them rudely.... Plaintiff also claims that Hebert used the phrase you people in talking to an African American employee;"

15. Petitioner is in the process to prove via, Mr. Freeman's "Statement of Affirmation" (and identified by number 1-24), that the facts demonstrated in both of my motions for evidentiary hearings are indeed, "extremely revelant", to the Second Circuit's discrete issues on remand which are as follows:

A. Ineffective Assistance of Appellate Counsel for:

1. Failure to investigate-4,7,9,11,14,16-23;

2. Failuer to raise Affiant's severance issue on appeal- 7,14,

16, 19, 20 22;

3. Failure to argue that the Trial Court erroneously gave a blanket self-defense jury instruction-7, 14, 16, 17, 19-23; and,

4. Failure to raise Affiant's change of venue argument-7,14, 19,22;

   B. Ineffective Assistance of Trial Counsel for:

1. Hindering Affiant's appeal by not turning over records to Petitioner's new Appellate Attorney- 4-7,9,11,14,16-24.

**Id. See,** (Mr. Louis M. Freeman Esq's "Statement of Affirmation").

16. Affiant asserts that  another reason why Mr. Laidlaw, Esq. intentionally declined to preserve a number of issues for my Direct Appeal, stems from the fact that my father realized that Mr. Laidlaw was robbing them and decided not paying him any more money.  Therefore, as detailed already at **supra**, Mr. Laidlaw now upset with my parents for not fulfilling their off-records agreement in completing paying his requested fee (as reflected in my bar complaint), he then decided to seek further revenge against my parents decision, by taking it out on me (hindering my appeal by not turning over my legal documents to Mr. Freeman);

17. Nevertheless, based on the fact that Mr. Freeman is a very experienced attorney, he noticed Mr. Laidlaw's "Foul Play" from the outset of his initial review of the records in my case, which led him to assert in his "Statement of Affirmation" at Point No. 14, "that one of the reasons I agreed to file Mr. Davidson's Petition  for Certiorari, was that I  thought 'Mr. Laidlaw handled the Davidson

<u>trial poorly and left no room to raise issues which could have been</u>

<u>meritorious'</u>.  Also, because § 848(e)(1)(B) convictions are rare

(the only one in the Second Circuit that I could find) I had to

research the Congressional intent."  <u>See,</u> (Attached, Mr. Louis M.

Freeman, Esq. "Statement of Affirmation" and Affidavit in Support

of the Hon. McCurn's Ex-parte Communication);

    **18.** That the record reflects at <u>supra</u>, where it was Mr. Laidlaw

who made me aware that the Government was spending "over one (1)

million dollars" to take me to trial, because I had no such knowledge

of the government's cost utilized on my case; and, it should be noted

where Mr. Laidlaw has been caught lying in his response to my bar

complaint, alleging that he turned over all my discovery materials

to Mr. Freeman.  <u>See,</u> (Attached, Mr. John Ford Laidlaw, Esq's response

to my bar complaint, dated April 4th, 2000);

    **19.** That the record should reflect where the Hon. Mccurn's

**"Ex-Parte Communication"** to Mr. Freeman has began to play a major/

vital role in the Second Circuit's issues on remand (bearing mostly

on Mr. Freeman's actions during my Direct Appeal proceedings), and

placing a great amount of pressure on him for vigorously defending

his former client's constitutional rights (and claim(s) of actual

innocence), during his appeal.  The Hon. McCurn's Ex-Parte contact

has now, basically placed Mr. Freeman's back against the wall (with

them, the Hon. McCurn, Mr. Laidlaw, Esq. and AUSA John G. Duncan,

Esq., all asking themselves, "why is it that this attorney (who is

an Officer of the Court, 'white like us at that' and who suppose to

be on our side at all times), is standing up and opening his mouth for that 'N----r?;'"

20. Affiant asserts that these are some very serious and sensitive factual claims being presented in good-faith, but **must** be addressed diligently to preserve the "Appearance of Justice **i.e.**, why Affiant proceeding as counsel of record in the case at bar, has even gone so far as writing a letter directly to the new U.S. Attorney, Hon. Joseph Pavone, that way in the near future no one can allege any lack of knowledge. **See**, (Attached letter to the Hon. Joseph Pavone, U.S. Attorney);

21. Therefore, Affiant submits that the present Affidavit in Support of the instant motion explicitly reflects where the Hon. McCurn, S.J. should be Ordered to Recuse himself from the case at bar and the government further Ordered to Respond to Affiant's "motion for evidentiary hearing and Supplemental motion of same, "to safeguard the integrity of the judicial system and appearance of justice (due to various racially discriminatory acts of **"Racial Profiling"** violating all of Petitioner's Constitutional Rights and Civil Liberties, for example:  Petitioner "Standing Trial While Black (STWB)");

22. Thus, it must be further submitted that the majority of exhibits and arguments contained in my motion for evidentiary hearing and supplemental motion of same, are again, **"Extremely Relevant"** with the two (2) discrete issues on remand by the Second Circuit; and

23. Petitioner, **Pro-Se**, asserts that in both motions for

evidentiary hearings, Affiant was very detail with his claims, arguments and exhibits, covering all the who, what, when, where, names, dates, and places etc., bolstering my case as a whole; and, that warrant's the mandatory grant for an evidentiary hearing.  **See**, **David v. U.S.**, 134 F.3d 470 at 478 (1st Cir. 1998).

**WHEREFORE**, based upon the aforementioned facts detailed herein as a whole, in conjunction with Affiant's instant motion and "motion for an evientiary hearing and supplemental motion of same," Affiant hereby asserts and certifies under the penalty of perjury (pursuant to Title 28 U.S.C. § 1746), that every fact set forth by me herein as a whole is true and correct to the best of my own personal knowledge and/or clear recollection.  Affiant further asserts/certifies that I am willing and able to testify under oath to the above stated fact in any District Court of the United States.

Executed on this _20_ day of _SEPTEMBER_, 2002

Respectfully Submitted,

_Jaime A. Davidson_
Jaime A. Davidson, Pro-Se.
Affiant

Sworn and Subscribed Before Me The Undersigned Authority, on this _10_ day of _Sept_, 2002.

_W Mouk_
Signature of Notary

Authorized by the Act of July 7, 1955, as amended, to administer oaths (18 U.S.C. 4004).

My Commission Expires: _____.

16

## AFFIRMATION

## IN THE MATTER OF JAIME DAVIDSON

LOUIS M. FREEMAN, an attorney duly admitted to practice law in the Courts of the State of New York and for the Southern and Eastern Districts of New York, affirms to the truth of the following under the penalties of perjury:

1. That I was originally contacted by Isaac Davidson, to appeal the conviction of his brother, Jaime A. Davidson.

2. That Mrs. Shirley Davidson retained me to appeal her son's case.

3. That upon being retained, I contacted the office of John F. Laidlaw, Esq., in Syracuse, New York, and introduced myself as Mr. Davidson's appellate counsel.

4. That I requested all of Mr. Davidson's trial preparation materials (Discovery materials) from Mr. Laidlaw, in order to review them thoroughly and begin my own independent investigation.

5. That after a number of requests, I conveyed to Mr. Laidlaw the importance of acquiring these documents for Mr. Davidson's appeal preparation, but I never received them.

6. That I explained to Mr. Davidson that Mr. Laidlaw had not sent me the discovery materials, and requested Mr. Davidson contact Mr. Laidlaw directly because time was running out and I had to prepare his appeal.

7. That Mr. Davidson was pushing me to get the material, but I explained to him that even if I got the material, if his trial counsel failed to preserve certain objections for appeal, then



"ATTACHMENTS"

he couldn't raise them. (For example, the severance issue and antagonistic defenses issue and the issue involving Robert Lawrence taking the stand and testifying as to self defense, which contradicted Mr. Davidson's alibi defense.)

8.  That once I began to prepare Mr. Davidson's appeal, all the other appellate lawyers began calling me from Syracuse, New York, and wanted me to take the lead on the appeal.

9.  That despite my serving as point person, Mr. Laidlaw still refused to comply with my request that he turn over all discovery materials.

10.  That I explained this to Mr. Davidson.

11.  That I also explained to Mr. Davidson how after going through his federal trial transcript it appeared that Mr. Laidlaw went to trial without conducting any pretrial investigations or hiring his own expert witnesses (for example, to re-examine Investigator Howard's cause of death.)

12.  That when Mr. Davidson's appeal was affirmed, I was the first person to tell him about that decision.  When I told him he sounded very sad, and he also sought my assistance to file his writ of certiorari.

13.  That Mr. Davidson kept calling me and asking me to please file his writ to the Supreme Court, because I knew his case well and I had already written the appeal to the Second Circuit.

14.  That one of reasons I agreed to file Mr. Davidson's petition for certiorari, was that I thought Mr. Laidlaw handled the Davidson trial poorly and left no room to raise issues which could have been meritorious.  Also, because §848(e)(1)(B) convictions are rare (the only one in



18

the Second Circuit that I could find,) I had to research the Congressional intent.

15.  That Mr. Davidson kept telling me that something was wrong with the government testimony that said Investigator Howard was killed.  Davidson told me he did not believe Robert Lawrence actually committed the murder.

16.  That had Mr. Laidlaw turned over Mr. Davidson's discovery materials including Investigator Howard's medical files as I had requested, I would have hired my own forensic pathologist to conduct an independent investigation.  Then, I might have been able to discover from the autopsy findings that Investigator Howard was "not" shot from close range.

17.  That this was a death penalty eligible case and a high profile case involving the death of a police investigator.  Therefore, I gave this case extreme priority, because the appeal had to be filed timely.  However, because trial counsel withheld documentation which might have demonstrated that Investigator Howard, was shot from long range,  I was limited as to what I could do.

18.  That I retained the services of a private investigator, Mr. Irwin Blye, from Queens, New York but, Mr. Blye's services had to be terminated for lack of finances.

19.  That the record will reflect all my earnest attempts to appeal Mr. Davidson's conviction and to vindicate Mr. Davidson from those charges, if possible.

20.  That I can confirm that Mr. Davidson has always been raising the issue that Investigator Howard could not have been shot from so close of a range, with a bullet wound the size of a quarter, being shot with a .357 revolver and the bullet staying in his head.



21.  That I wanted to pursue the alleged deputization of Investigator Howard, but Mr. Laidlaw hampered me with his failure to provide discovery and Mr. Davidson's family was having financial difficulty.   A decision by the family had to be made as to how to spend the money, on the appeal or on the investigator.

22.  That Mr. Davidson kept calling Mr. Blye to have the investigation started, but Mr. Blye did not want to get started until he was sure he would be paid.  The situation was frustrating and unfortunate because Mr. Davidson kept talking about issues he wanted to raise.

23.  That had Mr. Laidlaw turned over Investigator Howard's medical files and we had seen that the autopsy findings stated: "No evidence of close range firing on skin surrounding gun shot wound of entrance," my firm would have likely moved to have this investigation financed, by outside or third parties, if possible.

24.  That is was extremely frustrating and disheartening to myself and my firm that we had to give up the idea of conducting a separate independent investigation of our own.  I expressed this to Mr. Davidson at the time.  This is especially true now that we see there was something lurking out there that we were unable to uncover.

LOUIS M. FREEMAN



Affidavit of Mr. Louis M. Freeman, Esq.

Personally appeared before me, the undersigned notary duly authorized by law to administer oath, LOUIS M. FREEMAN, ESQ., being duly sworn, and states that he has personal knowledge of the following facts and they are true and correct.

1.     That my name is LOUIS M. FREEMAN, ESQ. I am over the age of 18 years old and under no disability that would make me incompetent to testify.

2.     That I, Louis M. Freeman, Esq., was appellant, Jaime A. Davidson's former appellate attorney;

3.     That I am attorney-at-law located at 30 Vesey Street, Suite-100, New York, NY 10007;

4.     That on or around January 10th, 2001 my office was contacted by the Chambers of the Honorable Neal P. McCurn, Senior Judge through his law clerk, inquiring if my signature found on my Statement of Affirmation contained in Mr. Davidson's Habeas Corpus Pleadings was authentic;

5.     That I expressed to the honorable Judge McCurn's law clerk that my signature on that (my) Statement of Affirmation was indeed authentic;

Sworn to and subscribed this **26** day of **June** 2001

_Louis Freeman_

Louis M. Freeman

_Michael Lewis Alperstein_

Notary Public,
Commission Expires:

MICHAEL LEWIS ALPERSTEIN
Notary Public, State of New York
No. 01AL0052360
Qualified In Kings County
Commission Expires April 30, **2003**

5

PRINCIPAL COUNSEL
VINCENT L. SCARSELLA
DANIEL A. DRAKE
ANTHONY J. GIGLIOTTI

ASSOCIATE COUNSEL
RODERICK CUEBBAS
MARGARET C. CALLAHAN
COLLEEN P. DIETRICH
ANDREA E. TOMAINO

INVESTIGATORS
JOANNE WALSH
WILLIAM P. ZENOSKY
MARY E. DAVIS
ANNA MARIE PETERS
SHERYL M. CRANKSHAW

NINTH JUDICIAL DEPART
CHAIRPERSONS

NELSON F. ZAKI
EIGHTH DISTRICT
BUFFALO

RICHARD E. ALEXA
SEVENTH DISTRICT
ROCHESTER

BARTLE J. GORN
FIFTH DISTRICT
SYRACUSE

CHIEF COUNSEL
GERARD M. LARU
BUFFALO

State of New York
# Attorney Grievance Committees

## CONFIDENTIAL

April 12, 2000

Mr. Jamie A. Davidson, Sr.
Reg. No. 37593-053(C-3/310)
FCI Edgefield
P.O. Box 724
Edgefield, SC 29824

RE: Complaint against John F. Laidlaw, Esq.

Dear Mr. Davidson,

Enclosed please find a copy of the response submitted to this office by Mr. Laidlaw regarding the complaint you filed against him. Kindly review the enclosed correspondence.

Your additional written comments may be submitted by April 26, 2000, before this office makes a determination.

Your cooperation in this matter will be appreciated.

Very truly yours,

SHERYL M. CRANKSHAW
Investigator

SMC/cea

Enclosure

EX. D

6

*John F. Laidlaw*

*Attorney at Law*
*The Gridley Building, Suite 304*
*103 East Water Street*
*Syracuse, New York 13202*

*Telephone:*
*(315) 474-1118*

*Fax:*
*(315) 474-8807*

April 4, 2000

RECEIVED

APR - 7 2000

GRIEVANCE COMMITTEE

Anthony J. Gigliotti, Esq.
New York State Attorney Grievance Committee
Fourth Judicial Department
Fifth Judicial District
465 South Salina St., Suite 106
Syracuse, New York 13202-2467

> Re:   Complaint of Jamie A. Davidson

Dear Mr. Gigliotti:

I have reviewed the complaint Mr. Davidson filed against me with your office and write in response to it.

By way of personal background I think it would be helpful for you to know a little about my professional background. I am a 1972 graduate of Syracuse University's College of Law where I was a member of both the Law Review and the Moot Court Board. Following graduation I was admitted to the bar in the Fourth Department on September 12, 1973. Shortly thereafter, I was hired by the Bronx County District Attorney's Office as a prosecutor. Assigned to their Supreme Court trial bureau, I tried felony cases of all types for several years. In May, 1976 I returned to Syracuse taking a position as an assistant district attorney in Onondaga County. For the next ten years I spent my time trying approximately 100 felony cases to verdict. Most of my career was spent prosecuting habitual criminals in the D.A.'s Career Criminal Unit. In the summer of 1986 I resigned my position as an assistant district attorney and went out on my own in private practice here in Syracuse. In the past 13 ½ years I have established a general practice with an emphasis on criminal defense work. In this area I have had extensive trial experience in both the state and federal courts. Since 1988 I have also been employed on a part-time basis as a law clerk to one of our Onondaga County Family Court judges.

I would estimate that since I have been out in private practice I have represented several thousand clients, mostly in the criminal law area. This is the first time in all these years that a former client has filed a complaint against me.

7

My involvement with Mr. Davidson began in February of 1992 when Hon. Neil J. McCurn of our local federal court assigned my office to defend Mr. Davidson on his indictment. Mr. Davidson had been charged, along with others with the crime of aiding and abetting the murder of a federal law enforcement officer in the first degree (18 U.S.C. Section 1114) and related crimes. The gravamen of the Government's case was that Mr. Davidson was the ring leader of a drug distributing gang from New York City whose actions cause the death of undercover police agent Wally Howard here in Syracuse on October 30, 1990. Following extensive pre-trial discovery Mr. Davidson's case was tried in our federal court before Judge McCurn during January and February of 1993. After an approximately 5 week trial, Mr. Davidson and most of his co-defendants were convicted of all counts of the indictment. Subsequently, on July 1, 1993, Judge McCurn sentenced Mr. Davidson to a life sentence without parole.

Following Mr. Davidson's sentencing his family retained counsel from New York City (Louis Freeman, Esq., and Joseph Calluori, Esq., of counsel) to handle the appeal. They were substituted as counsel by order of the Second Circuit Court of Appeals on September 16, 1993. During the fall of 1993 I assisted Mr. Davidson's new counsel by sending them requested portions of my file and by answering all their queries. I attach copies of three letters to appellate counsel which detail the materials I sent them.

It is my understanding that by decision filed September 8, 1994, Mr. Davidson's appeal was denied in all respects. Subsequently, I received notification on February 21, 1995 that his petition for a writ of certiorari to the United States Supreme Court had been denied.

I will answer Mr. Davidson's complaints in the order they are set forth in that portion of his papers labeled "Complaint of Misconduct Against Both Trial Attorneys with Supporting Facts."

Mr. Davidson alleges that in some fashion I used politically incorrect language during the trial by repeatedly using the expression "you people". In support of this he refers to a portion of the transcript of my opening statement to the jury in which that phrase was used. I have never heard anyone until now, assert the phrase "you people" is a racial epithet. My use of it in addressing the jury was merely to refer to them as a group and was spoken with no sinister or racist intent. That I am required to respond to such a ludicrous assertion is mind boggling.

More troubling is Mr. Davidson's assertion that his father paid me "around $3,500.00" to retain a private investigator. My recollection is that I only met with members of Mr. Davidson's family a few times prior to his trial, and at no time did we ever discuss, much less was I paid money to retain a private investigator. This simply is untrue. In addition, there never was any discussion of this with Mr. Davidson. I do however, recall that during the trial Mr. Davidson's family did on their own retain an investigator to do a criminal background check on one of the Government's witnesses.

Mr. Davidson complains that I violated his constitutional rights by not allowing him to testify at his trial. My recollection is that after several discussions we mutually agreed that it would not be in his best interest to take the witness stand as we feared that a vigorous cross-examination by the prosecutors would only contribute to the strength of their case.



Mr. Davidson complains that I have failed to turn over certain requested portions of his file. In this regard, I did on September 5, 1995 mail him an investigator's report concerning a background check done on one of the Government's witnesses. I attach a copy of that cover letter. I do recall that Mr. Davidson at one point requested I send him my entire file. I explained that as this would be a costly project both in terms of my time, the printing expenses and the shipping and handling charges, I would need a deposit from him. He answered me by letter that his family would send me a deposit but this never occurred. More recently, Mr. Davidson's latest apparent attorney Marie Y. Watson, Esq., of Atlanta, Georgia wrote requesting that I provide her with copies of all crime scene photos, any crime scene video and a cassette copy of Officer Howard's kel recording. None of these requested items are in my possession. You should further be aware that I did send portions of my file (primarily the trial transcript) to Mr. Davidson's appellate attorneys. I question the purpose of these continuing requests since it would appear that any attempt by Mr. Davidson to reopen his case at this late date is time barred by the one year limitation of 28 U.S.C. Section 2255. I believe I have made the appropriate responses to any of Mr. Davidson's requests which were reasonable.

Mr. Davidson alleges that I was part of some elaborate conspiracy to cover up his theory that Wallie Howard was killed by another police officer. This is almost too ludicrous to respond to, but for the record, I flatly deny it.

Mr. Davidson also complains about the conduct of my co-counsel Attorney Bruce Bryan. It is my recollection that due to the complexity of the case, all defendants were assigned additional counsel. Mr. Bryan was appointed by Judge McCurn to assist me. Mr. Bryan handled most of the legal research prior to and during the trial was of invaluable assistance in helping me formulate legal argument on the numerous evidentiary issues that came up. In my opinion, it is grossly unfair of Mr. Davidson to also defame Mr. Bryan who rendered so much assistance to the defendant during the trial.

The overall gist of Mr. Davidson's complaints is that he was denied the effective assistance of counsel at his trial. Surely if Mr. Davidson sincerely believed that he would have raised this as a key issue in his appeal. However, this was not done. I can only conclude that Mr. Davidson's recent ire against me arises out of his current contemplation of his bleak future.

In conclusion, I trust that I have answered all Mr. Davidson's complaints to your satisfaction. Mr. Davidson was entitled to a vigorous defense effort and I believe that he received that. That the evidence convinced the jury of his guilt in the murder of Officer Howard is something he will ultimately have to come to grips with.

Should there be any other information you require please let me know.

Very truly yours,

John F. Laidlaw

JFL:jmv

9

*John F. Laidlaw*

*Attorney at Law*

*The Gridley Building, Suite 304*
*103 East Water Street*
*Syracuse, New York 13202*

*Telephone*
*(315) 474-7773*

September 5, 1995

Jaime Davidson
37593-053
United States Penitentiary at Allenwood
P.O. Box 3000
White Deer, PA  17887

Dear Jaime:

Per your recent request, enclosed please find a three page fax your bother's investigator sent me concerning Gibbs' arrest in Virginia.  I also enclose copies of the Rochester police reports on his arrest there and a copy of his New York State rap sheet.

Very truly yours,

John F. Laidlaw

JFL/jmd
Encs.

*10*

*John F. Laidlaw*
*Attorney at Law*
*The Gridley Building, Suite 203*
*103 East Water Street*
*Syracuse, New York 13202*

*Telephone:*
*(315) 47_-__18*

August 28, 1993

Louis M. Freeman, Esq.
233 Broadway
Suite 3201
New York City, New York  10279

Re:   USA v. Jaime A. Davidson
Docket No.:  93-1416

Dear Mr. Freeman:

Pursuant to our phone conversation of yesterday afternoon, I am mailing out to you by UPS the following items:

1.   The indictment
2.   Defendant's Omnibus Motion
3.   Government's Response to Omnibus Motion
4.   11/25/92 Notes on Omnibus Motion Argument
5.   Judge McCurn's 12/16/92 Memorandum/Decision on Omnibus Motion
6.   Defendant's Proposed Voir Dire Question
7.   Defendant's Request to Charge and Supplemental Request to Charge
8.   Government's Trial Memorandum
9.   Letter to Grant Jaquith of 1/4/93
10.  Two Witness Lists
11.  Wally Howard transcript from trial
12.  Police reports of Lt. Boyle and Sgt. Driscoll
13.  Government's Memorandum Opposing Alibi Charge
14.  Government's Requests to Charge
15.  Government's Supplemental Request to Charge
16.  Government's Exhibit List of 2/18/93
17.  Verdict Sheet
18.  Government's Sentencing Memorandum
19.  Presentence Investigation Report
20.  Judgment in Criminal Case
21.  Notice of Appeal
22.  Scheduling Order dated 7/26/93

*11*



Louis M. Freeman, Esq.
August 28, 1993
- Page 2 -


      23.    Court Clerk's Record/Index
      24.    Court Clerk's 1st and 2nd Supplemental Index
      25.    Trial Transcript


      The other attorneys involved are: John G. Duncan, Asst. U.S. Atty., (315)423-5165; Scott Porter, (315)472-8717 (for defendant Gary Stewart); Fred O'Rourke, (315)471-4629 (for defendant Juan Morales); Bruce Bryan (315)476-1800 (for defendants Lenworth Parke and Robert Lawrence).

      I called the Second Circuit yesterday and was told that my motion for an extension of time was granted so that the Appellant's Brief is not due until 10/15/93 with the Government's Brief due 11/15/93 and the case to be argued the week of 12/6/93.

      I have prepared a motion to substitute counsel which I will mail out on Thursday, as soon as I hear from you that you have received the retainer. Please call and leave word with my secretary as soon as that occurs.

      If there are other documents you need please call and I will send them down forthwith. I will, of course, also make myself available to discuss any aspects of Mr. Davidson's trial you wish.

      Very truly yours,

      John F. Laidlaw

JFL/jmd
Encls.

12

*John F. Laidlaw*
*Attorney at Law*
*The Gridley Building, Suite 203*
*103 East Water Street*
*Syracuse, New York 13202*

*Telephone*
*(315) 47-1118*

September 27, 1993


Joseph Calluori, Esq.
225 Broadway, Suite 3300
New York City, New York  10007

Re:   Jaime A. Davidson

Dear Mr. Calluori:

As best I can make out from my notes, the following trial witnesses appeared on the following dates:

| | | |
|---|---|---|
| 1. | 1/22/93 | - Joseph Rugierro - DEA Agent |
| 2. | 1/25/93 | - Darryl Gibbs - informant |
| 3. | 1/25/93 | - Inv. Matthew Tynan - NYSP narc |
| 4. | 1/26/93 | - Emmanuel Frideman - evidence custodian |
| 5. | 1/26/93 | - William Lafort - investigator |
| 6. | 1/26/93 | - Michael Lynch - Syracuse P.D. |
| | 1/27/93 | - Michael Lynch - continues |
| 7. | 1/27/93 | - Charles Brown - NYSP investigator |
| 8. | 1/27/93 | - John Pierce - forensic scientist |
| 9. | ? | - Una Patel - motel owner |
| 10. | ? | - David Polikowski - forensic |
| 11. | ? | - David Blair - real estate property manager |
| 12. | ? | - Deborah Rust - Onondaga County Finance Dept. - clerk |
| 13. | 1/29/93 | - Martha Weatherspoon - accomplice |
| 14. | 1/29/93 | - Luther Gregory - informant |
| | 2/1/93 | - Martha Weatherspoon - (recalled) |
| 15. | ? | - Jeffrey Piedmonte - Syracuse P.D. |
| 16. | ? | - Ronnie Hawkins - jail deputy |
| | ? | - Luther Gregory - informant (recalled) |
| 17. | ? | - Dennis Cimbal - NYSP investigator |
| | 2/4/93 | - Dennis Cimbal - (continues) |
| 18. | 2/4/93 | - Early Hayes - civillian witness |
| 19. | ? | - Shirley Sullivan - civillian witness |

13

20.    ?        - Dennis Dougherty - NYSP investigator
21.    ?        - Reggie Tillery - DEA agent
22.    ?        - David Patteran - civillian witness
23.    ?        - Christopher Paolini - civillian witness
24.    2/5/93 - John Tierney - Syracuse P.D. Sgt.
25.    2/5/93 - Rebecca Thompson - Syracuse P.D.
26.    2/5/93 - Felicia Stewart - civillian witness
27.    2/5/93 - Sharon Miller - civillian witness
28.    2/5/93 - Thomas Bailey - Syracuse P.D.
29.    2/5/93 - James Kimack - fingerprint
       2/8/93 - James Kimack (continues)
30.    2/8/93 - Nancy Lee Myers - civillian witness
31.    ?        - Jeffrey Rubenstein - Beep Call owner
32.    ?        - Robin Vivona - forensic chemist
33.    ?        - Allan Toomey - investigator
34.    ?        - Merrill Kaszubinski - Syracuse P.D. police chemist
35.    ?        - Ernest Peele - FBI gun-shot residue expert
36.    ?        - Dennis Reagan - Syracuse P.D. narc
37.    ?        - Henry Caruso - jailer
38.    ?        - Henry Bivins - Syracuse P.D.
39.    ?        - Daniel Erwin - Syacuse P.D. crime lab
40.    ?        - James Rogers - NYSP investigator
41.    ?        - Diane Hartnett - nurse
42.    ?        - Stanley Wideman - NYSP
43.    ?        - Anthony Rossillo - Syracuse P.D.
       2/12/93 - Anthony Rossillo (continues)
44.    2/12/93 - William Nelson - DEA supervisor
45.    2/12/93 - John Connelly - apartment super
46.    2/12/93 - Michael Vella - orthopedic surgeon
47.    ?        - Gwen Morrow - civillian witness
48.    ?        - Kenneth Shelton - civillian witness
       2/16/93 - Kenneth Shelton - (continues)
49.    2/16/93 - Norma Jean Clifton - apartment manager
50.    ?        - Frederick Edwards - civillian witness
51.    ?        - Mitchell Paul - civillian witness
52.    ?        - Arthur Paul - Onondaga County Deputy
53.    ?        - Lyle Baxter - NYSP investigator
54.    2/17/93 - Thomas Borowitz - fingerprint expert
55.    2/17/93 - William Donohue - fingerprint expert
56.    ?        - David Rigle - assistant medical examiner
57.    ?        - Michael Rathbun - Syracuse P.D.
58.    ?        - Michael Lemm - Syracuse P.D.
59.    ?        - John Reidy - electronic surveillence technician
60.    2/18/93 - Gary Pratt - ballistics expert
       ?        - Dennis Cimbal - (recalled)
61.    ?        - Anthony Stimpson - Syracuse P.D. investigator

*14*

| 62. | ? | - David Mirizio - Syracuse P.D. investigator |
| 63. | ? | - John Barnum - Syracuse P.D. investigator |
| 64. | ? | - Thomas Unger - Syracuse P.D. investigator |
| 65. | ? | - Dean Decker - NYSP investigator |
| 66. | ? | - Gerald Sablowski - Syracuse P.D. investigator |
| 67. | 2/19/93 | - Isaac Davidson, Jr. - defendant's brother |
| 68. | 2/19/93 | - Juan Hildago - record promoter |
| 69. | 2/19/93 | - Isaac Davidson, Sr. - defendant's father |
| 70. | 2/19/93 | - Vielka Boyce - alibi witness |
| 71. | 2/19/93 | - Damaris Davidson - defendant's sister |
| 72. | 2/19/93 | - Rosalyn Beswick - defendant's sister |
| 73. | 2/19/93 | - Robert Lawrence - co-defendant |

Very truly yours,

John F. Laidlaw

JFL/jmd

*John Ford Laidlaw*
*Attorney at Law*
*The Gridley Building, Suite 304*
*103 East Water Street*
*Syracuse, New York 13202*

*Telephone:*
*(315) 474-11...*

November 2, 1993

Joseph Callouri, Esq.
225 Broadway, Suite 3300
New York City, New York  10007-3001

            Re:    Jaime A. Davidson

Dear Joe:

        In response to your letter of October 27, 1993, I enclose copies of the following:

            1.    Luther Gregory's affidavit of 10/31/90;
            2.    Gregory's six page affidavit of 11/21/90;
            3.    Michael Lynch's three page affidavit of 10/30/90(?); and
            4.    Lynch's one page supplemental report of 10/31/90.

        I do not recall if the government had DMV records showing that the gray station wagon was registered to Davidson.  Such records were not part of the trial evidence.

        I do not know why Gregory made no courtroom identification of Jaime Davidson.  It certainly was surprising.

        Hope these documents clear up things.

                            Very truly yours,

                            John Ford Laidlaw

JFL/jmd
Encls.

16

Jaime A. Davidson
Reg. No. 37593-053 (B-4)
USP - Pollock
P.O. Box - 2099
Pollock, LA  71467

September 16, 2002

Hon. Joseph Pavone
United States Attorney
Northern District of New York
P.O. Box - 7198
Syracuse, New York 13261-7198


RE: UNITED STATES v. JAIME A. DAVIDSON
    CIVIL NO. 5:00-CV-869(NPM) / APPEAL NO. 01-2370

    REQUEST FOR AN UNMONITORED LEGAL CALL TO REQUEST AN
    IMMEDIATE EVIDENTIARY HEARING


Dear Hon. Pavone:

In light of the District Court's August 28th, 2002, "Show Cause
Order/Letter," I am respectfully requesting to arrange a legal call
with you, to discuss and attempt to resolve and/or find a viable
solution to the matter at hand in dispute, i.e., in good faith and
in an amicable/amenable manner.  Based on the fact that the District
Court has denied my most recent request for an evidentiary hearing
without any factual/legal (authority) basis and request for the
appointment of counsel being explicitly ruled on, on numerous
occassions to assist me on my factual/criminal investigation, I have
been compelled to proceed by contacting you personally on the above
mentioned matter as a pro-se, litigant (conducting my own
independent investigation as "counsel of record.").

Hon. Pavone, it's my opinion that we must talk, concerning the
telephone conversation Dr. David A. Rigle had with the Rev. Angela
E. Brown,M.Div. and Mr. Robert H. Goldberg, J.D.,M.D. on December
5th, 2000.  Had I been appointed an attorney, he/she would have
contacted you long time ago, to discuss the best possible way on
acquiring an affidavit/deposition from Dr. Rigle.  The record is
already crystal clear that said information is new and/or exculpatory
in nature to my defense (proving my claim(s) of actually (factually)
innocent).

Moreover, Hon. Pavone, I am being very diligent with this letter,
because viewing the Court's date of response, the complexity,
sensitivity and voluminous nature of this case, there is no way from
my own personal knowledge/view, that Mr. John G. Duncan, Esq. will
be able to properly respond to the Second Circuit's June 12th, 2002,
Order with the GRANTED issues for a COA in full compliance with the
District Court's August 28th, 2002, "Show Cause Order," to "file a
Memorandum of 'fact and law' setting forth the 'position of the
United States' in relation thereto."  In Mr. Duncan's October 15th,
2000, initial response to my §2255 Petition, he attempted to by-pass
the Government's burden of proof by alleging that a number of

*17*

LETTER TO HON. PAVONE.
     PAGE 2.

witnesses "<u>CATEGORICALLY DENIED</u>" various statements; but, today, said litigation strategy would not pass muster and/or survive Judicial scrutiny. Facts "<b>MUST</b>" be proffered via, "<b>AFFIDAVITS</b>" sworn under the penalty of perjury. The record shows/proves where the Government since then to date, is wasting too much tax dollars and abusing of Judicial Economy by declining to hold a factual position, when it knows better than any other attorney/prisoner, the Federal Rules of Civil/Criminal Procedures.

Additionally, various witnesses "must" be cross-examined under oath, to find out their positions which are extremely substantial with my Ineffective Assistance of Appellate Counsel for: 1. failure to investigate; 2. failure to raise a severance issue; 3. failure to raise that the District Court erroneously gave a blanket Self-Defense Jury instruction; 4. failure to raise petitioner's change of venue claim; and 5. most importantly, trial counsel was ineffective while hindering petitioner's appeal, by not turning over all documents to Appellate counsel. Thus, there are too many issues which would have to be addressed in full details which "CANNOT" be handled in full compliance with my due process rights being protected (litigating on paper), and an "Evidentiary Hearing" would have to be convened, to respond to a number of factual points raised in my initial §2255 Petition and initial Reconsideration Motion submitted on December 28th, 2000, which are "<b>EXTREMELY RELEVANT</b>" with the Second Circuit's discrete issues remanded and are in pertinent parts as follows:

  I.  <u>See</u>, Motion for Evidentiary Hearing with attached Exhibits numbered on the bottom, right hand corner by hand, which specifically reflects the following:

  a.  Page 1- 01-2370 June 12th, 2002, Order with discrete issues;

  b.  Page 22- Mr. Louis M. Freeman, Esq. "Statement of Affirmation intentionally overlooked by the Hon. McCurn;

  c.  Page 38- Letter to Investigator Henry Brown;

  d.  Page 41- Letter by YTF's, Co-Director, Rev. Angela E. Brown,M.Div., to the Hon. Neal P. McCurn,S.J., regarding Mr. David A. Rigle's,M.D. "<u>new assertions</u>;"

  e.  Page 42- Affidavit by the Rev. Brown surrounding a limited area of her factual investigation;

  f.  Page 53- Affidavit by (then attorney) Ms. Kate Rosenthal, concerning the alleged forensic expert and imposter, Mr. Warren Stuart Bennett;

  g.  Pages 68-69- Affidavit of Mr. Robert Lawrence, speaking in part of proffer by Mr. Gary Stewart to AUSA, Duncan. <u>See also</u>, point nos. 20,22,23,26,<u>27</u>,<u>30-34</u>, and 36-40 in said affidavit;

  h.  Page 174- Affidavit by my forensic science expert, Mr. Robert H. Goldberg,J.D.,M.D. supporting my claim of innocence;

  i.  Pages 184-85- Excerpts of Officer, Wallie Howard, Jr's

<span style="text-align: right; display: block;">*18*</span>

autopsy report (never used during the Federal Grand Jury neither at my Federal Trial);

j.  Page 186- Affidavit of Mr. Herbert Leon MacDonell regarding Mr. Warren Stuart Bennett, being an imposter and creating a fraud which spilled over from the State Court to my Federal Trial;

k.  Pages 201-02- Dr. Rigle's trial testimonies where he was made to "**ASSUME**" Officer Howard, Jr's seated position when allegedly shot;

l.  Pages 203 & 205- The seated position Officer, Howard, Jr. was found in, after allegedly being shot;

m.  Page 207- A letter to Dr. Rigle by Mrs. Marie Y. Watson, Esq. after he had agreed to be deposed, asserting that the Government had lied to him about Officer, Howard Jr's seated position found after being shot; and

n.  Page 208- Letter by Dr. Rigle to Dr. Goldberg, now refusing to be deposed as to what he had initially asserted to them earlier.  And now, stating that, "**if there is a valid need for my expert assistance, I should be advised of such through proper legal channel.**"  Plus, a copy of said letter was later "faxed" to Inv. Henry Brown (Onondaga County District Attorney's Office), to place them on notice of the "**FRAUD**" created in my case (of Officer Howard Jr's actual cause/ manner of death), and his testimony in support of same. Further, since then to date, nothing has yet been done to correct my trial record etc.

II.  See, Motion for Reconsideration dated December 28th, 2000, consisting of the material facts which are as follows:

a.  My novel formed affidavit with voluminous detailed exhibits A - Q.2, which "**MUST**" be replied to, in full details by "**ALL ELEVEN TRIAL ATTORNEYS**" which under the Pinkerton Doctrine, "over my objections and without my consent," all the attorneys decided to present a "**UNIFIED TRIAL DEFENSE**" which conflicted with my requested trial defense; and

b.  My entire Bar Complaint against all eleven (11) trial counsels must be responded to individually and in full details by each trial counsel, with my attached "**QUESTIONAIRE**," etc. etc.

Therefore, Hon. Pavone, I humbly pray that you agree with me, and acknowledge that the aforementioned facts and claims to be answered are too voluminous for Mr. Duncan, Esq. and/or your staff to investigate, then after, to be litigated on paper (which consists mainly of factual issues outside the courtroom and/or Judge's recollection).  I am respectfully requesting that you (Hon. Pavone), ask the District Court to "set a calendar date for an evidentiary hearing (to vindicate the appearance of justice and the integrity of the judicial system);" especially, in light of the secret meeting divulged in Mr. Robert Lawrence's affidavit that caught me by great

*19*

LETTER TO HON. PAVONE.
      PAGE 4.

"SURPRISE" at trial and which was the actual testimony that the jury stated was the reason for them finding me guilty (and, said meeting was also confirmed by Ms. Rosenthal to the Rev. Brown),and now, the truth of my innocence finally coming to light (also, with Dr. Rigle's new assertions). Plus, it is also imperative that you contact Inv. Henry Brown, to place on the record Dr. Rigle's assertions to him regarding the Government lying to him about Howard Jr's seated position found "before and after" he was shot.

Thanks in advance for your time, assistance and/or earnest consideration and compliance in the instant matter at hand. And, for the best interest of justice to enhance the public's confidence in the judicial system, I humbly pray that you also see the need for an immediate "Evidentiary Hearing" (to stop abusing all the judicial economy with all the Appeals, voluminous litigations, vacaturs and further remands).

Thus, upon being in receipt of this letter, I humbly pray that you would contact my B-4 Unit Team at USP-Pollock to discuss the contents and substance of this letter, to arrange for a legal call. I will be doing likewise, so please inform your staff that if they receive a call with a recording from a Federal prison stating to press 5 to accept a "pre-paid call," to take it, because it is me calling to speak to you. Nevertheless, if you are unavailable, please leave someone in charged to handle the matter at hand (in light of the sensitive and extraordinary circumstances surrounding this case). Your most rapid reply as the "New United States Attorney in Syracuse, New York" will be highly appreciated in good faith (to preserve the appearance of justice and correct the "FRAUD" committed upon the court), to arrive to a consensus and requesting for an "UNMONITORED LEGAL CALL TO FURTHER DISCUSS WHY THERE IS SUCH A CRITICAL NEED FOR AN EVIDENTIARY HEARING." I am always...

Very truly yours,

_Jaime A. Davidson_

Jaime A. Davidson, pro-se.
Proceeding as "COUNSEL OF
      RECORD."

JAD/jad

cc: Rev. Angela E. Brown,M.Div.
    Hon. Neal P. McCurn,S.J.
       "IN CHAMBERS"
    Inv. Henry Brown (Onondaga County D.A's Office)
    Mr. David A. Rigle,M.D.
    Mr. Robert H. Goldberg,J.D.,M.D.
    Hon. John Ashcroft (U.S. ATTORNEY GENERAL)
    Mayor, Roy A. Bernardi (Syracuse, New York)
    File

20